STATE

v.

Louis L. VINAGRO, Jr.

No. 80–66–M.P.

Supreme Court of Rhode Island.

Aug. 14, 1981.

Dennis J. Roberts, II, Atty. Gen., Kathryn A. Salmanson, Sp. Asst. Atty. Gen., for plaintiff.

John J. Bevilacqua, Providence, for defendant.

OPINION

KELLEHER, Justice.

This petition for certiorari involves a criminal complaint that contains four counts, all of which relate to various infractions of the provisions of G.L. 1956 (1976 Reenactment) chapter 1 of title 4, which is entitled "Cruelty to Animals." Three of the four counts each claim that Louis L. Vinagro, Jr. (Vinagro) kept a pit bulldog for the express purpose of having the dog take part in fights. The complaints were filed by Lionel Hetu, general agent for the Society for the Prevention of Cruelty to Animals, who was acting pursuant to the specific authority vested in him by § 4–1–21. The complaints were issued following a search of Vinagro's residence in Johnston by agent Hetu, who had obtained a search warrant earlier from the District Court. The warrant's inventory return indicates the seizure of three pit bulldogs. The three possession counts violate the provisions of § 4–1–10.[1] The case was tried before a justice of the District Court, who, after a lengthy hearing, found Vinagro guilty of all four counts. The defendant was fined $50 on each of the possession charges. This is the maximum amount called for by § 4–1–10. He subsequently filed this petition for certiorari with us pursuant to the terms of G.L.1956 (1969 Reenactment) § 12–22–1.1 (1980 Cum.Supp.).

---

1. The fourth count claimed that Vinagro maintained a place where pit bulldogs could fight, a violation of G.L.1956 (1976 Reenactment) § 4–1–9. Such a conviction, as will be seen, constitutes a petty misdemeanor and is not subject to review by way of a petition for certiorari. Rather, an appeal from this conviction is presently pending in the Superior Court.

In his petition, Vinagro contends that portions of § 12–22–1.1 which authorizes a direct review of the District Court's action on the possession convictions by way of certiorari violate his right under the Rhode Island Constitution to a jury trial. Our disposition of this issue makes it unnecessary for us to consider the other issues raised by Vinagro.

In order that Vinagro's jury-trial claim can be put in its true frame of reference, we shall first refer to the statutory classifications of crime that are found within G.L. 1956 (1969 Reenactment) § 11–1–2 (1980 Cum.Supp.). This section describes four varieties of criminal offenses and states that, unless otherwise provided, any criminal offense that carries a potential punishment of more than a year's imprisonment or a fine in excess of $500 is to be considered a felony. Any offense that may be punishable by a term of imprisonment of up to a year or by a fine not in excess of $500, or both, is described as a misdemeanor, while an offense carrying a potential of up to six months' imprisonment or a fine of up to $500, or both, is called a petty misdemeanor. Any offense that is punishable only by a fine that does not exceed $500 is called a violation.

Because of the provisions of G.L.1956 (1969 Reenactment) § 12–3–1 (1980 Cum. Supp.), the District Court has original jurisdiction when the offenses are classified as misdemeanors or violations. Under the present statutory scheme in Rhode Island, "[e]very person aggrieved by the sentence of the district court for any offense other than a violation may, within five (5) days after such sentence appeal therefrom to the superior court * * *." General Laws 1956 (1969 Reenactment) § 12–22–1 (1980 Cum. Supp.). The appeal to Superior Court is a de novo appeal and is to be tried by a jury unless the defendant waives his right to the jury trial. See State v. McGuire, 90 R.I. 301, 157 A.2d 657 (1960); G.L.1956 (1969 Reenactment) § 12–17–3.

Vinagro argues that the General Assembly acted unconstitutionally when it failed to provide a de novo appeal to the Superior Court for violation convictions first found in the District Court. He claims that the Rhode Island Constitution gives him the right to a jury trial, which right is broader in scope than that granted by the United States Constitution. He concedes that he is not entitled to have a jury trial under the Federal Constitution because the maximum penalty for each charge in the case at bar is a $50 fine.

Although the United States Supreme Court in Baldwin v. New York, 399 U.S. 66, 73, 90 S.Ct. 1886, 1890, 26 L.Ed.2d 437, 443 (1970), has ruled that an accused is not entitled to a jury trial under the Federal Constitution when the potential sentence cannot exceed six months, the Court has not established the right to a jury trial in criminal cases in which only a fine has been imposed against an individual. However, two Federal Circuit Courts of Appeals have adopted $500 as the minimum amount that would guarantee a jury trial. United States v. Hamdan, 552 F.2d 276, 280 (9th Cir. 1977); Douglass v. First National Realty Corp., 543 F.2d 894, 902 (D.C.Cir.1976). Accordingly, we believe that it is safe to conclude that a jury trial is not required by the Federal Constitution when the maximum fine to be imposed, as in the cases at bar, is less than $500. See Muniz v. Hoffman, 422 U.S. 454, 477, 95 S.Ct. 2178, 2190–91, 45 L.Ed.2d 319, 335 (1975).

However, the fact that Vinagro is not entitled to a jury trial under the Federal Constitution does not terminate our inquiry. The right to trial by jury has its own unique basis under the Rhode Island Constitution. This right is found in the following provisions of our State Constitution: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *" (art. I, sec. 10) and "The right of trial by jury shall remain inviolate" (art. I, sec. 15).

The inviolability provision of art. I, sec. 15 has been held to be a guarantee that justiciable controversies which were triable by a petit jury when the Rhode Island Constitution was adopted in 1842 will continue to be so triable without any restric-

tions or conditions that could materially hamper or burden the right. *In re McCloud*, 110 R.I. 431, 435, 293 A.2d 512, 515 (1972); *Opinion to the Senate*, 108 R.I. 628, 633, 278 A.2d 852, 855 (1971); *Mathews v. Tripp*, 12 R.I. 256, 258 (1879). Section 15 conserves the right as it existed at the time the State Constitution was adopted. *Mathews v. Tripp*, 12 R.I. at 258. Thus, the decisive issue presently before us is whether a defendant was entitled to a jury trial in 1842 for the type of offense with which Vinagro is charged. If in 1842 a defendant was entitled to a jury trial for this type of offense, then Vinagro is entitled to one today.

■ As will be seen, our research reveals that the General Assembly acted unconstitutionally when in 1976 it established the classification "violation" and failed to provide the *de novo* appeal to the Superior Court as it did for those individuals who were charged with committing misdemeanors or petty misdemeanors. It is clear that in 1842 and prior thereto "any person" who was aggrieved at "any sentence" pronounced against him by a magistrate [2] was entitled to an appeal to the next highest court, the Court of Common Pleas.[3] Furthermore, we are compelled, after an examination of the pertinent historical documents, to conclude that such an appeal was a *de novo* appeal with a right to trial by jury.

The pertinent part of the statute that governed appeals from a magistrate's sentence in 1842 read as follows:

"Section 16. Any person who shall be aggrieved at any sentence of any magistrate pronounced against him on any complaint for threats, assault or battery, or both, or for theft, or for any offence which is or shall be within the jurisdiction

of such magistrate to try and determine, may appeal from such sentence to the *court of common pleas*, then next to be holden in the same county after ten days: * * * And said appeal shall be there *heard and tried*, and the judgment or sentence of said court therein shall be final." Public Laws Feb. 3, 1838, ch. 9, § 16, "An act concerning crimes and punishments." (Emphasis added.)

Initially, we note that the absence of an explicit reference to "de novo appeal" or to "trial by jury" is not determinative. Indeed, the present statute governing the appeals to Superior Court in criminal matters does not mention either of those terms. General Laws 1956 (1969 Reenactment) § 12–22–1 (1980 Cum.Supp.). The absence of such terms in the 1838 act can be explained by reference to other portions of that act and to cases at that time.

We attach significance to the fact that the appeal under P.L.1838, ch. 9, § 16, was to the Court of Common Pleas. That court was one wherein a jury was utilized in criminal cases.[4] Public Laws Feb. 3, 1838, ch. 9, § 19, p. 990, "An act concerning crimes and punishments." We also attach significance to that portion of P.L.1838, ch. 9, § 16, which states that the appeal is to be "heard and *tried*." (Emphasis added.) The word "tried" denotes a factfinding type of appeal rather than an appeal limited to correcting errors of law.

A reference to the statute governing appeals in civil cases indicates that the lack of an explicit reference to "jury" is without significance. In 1822 certain civil actions were tried in the first instance by a Justice of the Peace. As in criminal cases, an appeal could be taken to the Court of Common Pleas. Public Laws 1822, "An act establishing Justices of the Peace, and regu-

---

2. A "magistrate" was also referred to as a "Justice of the Peace" and occupied a similar position in 1842 to that of a District Court judge today. Public Laws Feb. 3, 1838, ch. 9, §§ 1–12.

3. The Court of Common Pleas was a trial court that had criminal jurisdiction in 1842 which was similar in many respects to that possessed by the Superior Court today. *See* P.L. Feb. 3,

1838, ch. 9, §§ 18, 19, "An act concerning crimes and punishments."

4. Public Laws 1822, "An act apportioning each town's quota of Jurors to attend the several Courts of this State, and directing the method of choosing them, and regulating their attendance at said Courts."

lating the proceedings and trials in civil actions brought before them," Section 8, p. 145:

"Sec. 8. *And be it further enacted,* That any party who shall be aggrieved at any judgment of any justice of the peace or warden, may appeal therefrom to the next court of common pleas to be holden in the same county, where the party so aggrieved shall have a hearing of said case, which shall be final; provided he shall within five days pay the costs, and give bond in said justice's court, in a sum not exceeding fifty dollars, with sufficient surety or sureties, to prosecute such appeal with effect, or in default to pay costs." (Emphasis in original.)

One can observe that this statute governing civil appeals does not mention "trial by jury," just as that statute governing criminal appeals does not. However, the colonial court records that can now be found in the Superior Court clerk's office for Newport County contain an 1838 case wherein the record indicates that a civil appeal from a judgment of a justice of the peace was tried to a jury in the Court of Common Pleas. *Northam v. Waldo,* Newport Court of Common Pleas, 1838, p. 287.

Additional support for Vinagro's jury-trial claim can be found in *State v. Peckham,* 3 R.I. 289 (1838). There, Peckham was indicted for selling twelve bottles of imported champagne to a Providence innkeeper without obtaining the necessary municipal license. The penalty for the unlicensed sale of less than ten gallons of "strong liquors" was a $50 fine. The jury returned a "special" verdict in which it stated that it was "wholly ignorant" about whether Peckham was "by law punishable" but that if he was, he had indeed sold liquor without a license. Chief Justice Durfee, writing in 1838, made short shrift of Peckham's claim that the licensing requirement ran afoul of the constitutional prohibition against a state's levying any impost or duty on imports. What is more significant to us, however, is that *Peckham* is proof positive that in January

1838 an individual charged with a crime carrying a penalty of $50 was entitled to a jury trial.

The conclusion we have reached is further buttressed by four criminal cases, *infra,* which were decided shortly after our State's Constitution was adopted in 1842. Although each of these cases is post-1842, they were appeals brought pursuant to an identical statute that governed criminal appeals in 1838.[5]

In February of 1846, one Henry Braman was found guilty by a justice of the peace of violently assaulting William Thurston. For this he was sentenced to five days' imprisonment. The defendant appealed from this judgment to the Court of Common Pleas, where a jury again found him guilty of the charge. *State v. Braman,* Newport Court of Common Pleas, May Term 1846, p. 214.

In October of 1849, one Peley Bryer was charged with selling liquor without a license. He was found guilty by a justice of the peace and fined $20. Bryer's appeal to the Court of Common Pleas was tried by a jury, which also found him guilty of the charge. *State v. Bryer,* Newport Court of Common Pleas, November 1849, pp. 428–29.

In November of 1851, one Robert Stephenson was acquitted of the charge of selling liquor without a license. He had previously been convicted by a justice of the peace but appealed to the Court of Common Pleas, where a jury found him not guilty. *State v. Stephenson,* November 1851, Newport Court of Common Pleas, p. 555.

In the same year, one Peter Cook, tried for the same crime, was fortunate enough to receive the same result. A jury in the Court of Common Pleas also found him not guilty after he had been previously convicted by a justice of the peace. *State v. Cook,* November 1851, Newport Court of Common Pleas, p. 555.

5. In 1844, the Rhode Island statutes were revised. That section governing criminal appeals from judgments of the justices of the peace remained unchanged. Public Laws 1844, "An act concerning crimes and punishments," Section 150, p. 406.

These cases clearly demonstrate that a criminal appeal from a judgment of a justice of the peace was triable to a jury in 1842. This practice was explicitly embodied in the statute when the Rhode Island laws were revised in 1857: "Such appeal shall be heard and tried in the appellate court *with a jury* and the judgment or sentence of the court of common pleas therein, shall be final except in matters of law." (Emphasis added.) Revised Statutes of Rhode Island, Title XXXI, ch. 221, § 6, p. 559 (1857).

■ Prior to 1976, any defendant who was aggrieved by *any sentence* of a District Court judge could appeal *de novo* to the Superior Court. *State v. McGuire*, 90 R.I. 301, 157 A.2d 657 (1960); G.L.1956 (1969 Reenactment) § 12–22–1. However, in 1976, with the addition of § 12–22–1.1, a direct appeal for violation convictions to this court was provided by way of certiorari. Public Laws 1976, ch. 173, § 6. We find that this amendment was an impermissible one with respect to those violations which are criminal in nature because in 1842 a defendant could appeal *de novo* from *any criminal conviction* of a justice of the peace. The 1976 amendment took away a right to which a defendant was entitled in 1842. The right to trial by jury is placed absolutely beyond the power of the Legislature to alter or abolish. *Dyer v. Keefe*, 97 R.I. 418, 198 A.2d 159 (1964).[6]

The state contends that the requirement of a jury for violations will be cumbersome and expensive. Although it is true that the requirement of a jury in additional cases will increase administrative costs, it is inappropriate to allow such a consideration to displace the clear command of the State Constitution. If the administrative burden becomes onerous, the proper solution is to amend that constitution.

The petition for certiorari is granted, the judgments appealed from are quashed, and the case is remanded to the District Court with direction that the petitioner be given an opportunity to perfect his claim to a jury trial.

BEVILACQUA, C. J., and SHEA, J., did not participate.

---

**6.** In *State v. Holliday*, 109 R.I. 93, 280 A.2d 333 (1971), the court, in applying the rationale of *Baldwin v. New York*, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437, 440 (1970), ruled that persons charged with "petty offenses" were not entitled to jury trials. We take this opportunity to point out that at no time in *Holliday* was the court confronted, as it is here, with what was the thrust of the state's constitutional guarantee of the inviolability of the right to a trial by jury.

We would also stress that we are not deciding that a jury trial may be required for any incident which may be classified as a "violation" pursuant to the definition found in G.L. 1956 (1969 Reenactment) § 11–1–2 (1980 Cum. Supp.). Rather, we are called upon in the case at bar to decide the jury issue with respect to violations which are criminal in nature even though § 11–1–2.1 specifies that a violation conviction "shall not give rise to any disability or legal disadvantage." Vinagro was arrested following a search of his property and found himself embroiled in a "justiciable controversy" which, if it had taken place in 1842, could have been resolved by a jury.