## ADVISORY OPINION TO The GOVERNOR.

### No. 81–268–M.P.

Supreme Court of Rhode Island.

Nov. 20, 1981.

Dennis J. Roberts, II, Atty. Gen., amicus curiae.

William F. Reilly, Public Defender, Merlyn O'Keefe, Asst. Public Defender, Barbara Hurst, Chief Appellate Atty., Providence, amicus curiae.

To His Excellency J. Joseph Garrahy
 Governor of the State of Rhode Island and Providence Plantations

We have received from Your Excellency, pursuant to section 2 of article XII of the amendments to the State Constitution, a request for our advice on the constitutionality of P.L.1981, ch. 104, "An Act Relating To Criminal Procedure," which is to become effective on January 1, 1982. Because of

the significant impact this act may have on the administration of our criminal-justice system, we have requested and received *amici curiae* briefs from the offices of the Attorney General and the Public Defender. After completing our research and analyzing the arguments of these *amici curiae*, the undersigned Justices of the Supreme Court respectfully submit their response to the following questions presented in your inquiry:

"1. Can this act constitutionally declare the State of Rhode Island to be a single district for the purpose of prosecuting and punishing criminal offenses over which the Superior Court has jurisdiction?

"2. Can this act constitutionally empower the Presiding Justice of the Superior Court with discretion as to venue regarding specified offenses?"

 As a preliminary matter, we feel it necessary to reiterate our remarks in *Opinion to the Senate*, 108 R.I. 628, 630, 278 A.2d 852, 853 (1971). In posing questions such as the ones presented, the body seeking our advice should specify the particular provisions of the Federal and State Constitutions which might be violated by the legislation under review. Insofar as the act purports to declare Rhode Island a single judicial district for purposes of prosecutions cognizable in the Superior Court and vests discretion in the Presiding Justice of the Superior Court to designate the location of such prosecutions, it sanctions the trial of an accused in a county other than that in which the offense occurred. Therefore, we assume the first question posed relates to the issue of whether the act constitutes an impermissible intrusion by the Legislature into the arena reserved to the judiciary under art. III of our State Constitution. We construe the second question to relate to the issue of whether the act infringes the jury-trial right of an accused guaranteed by the Sixth Amendment to the United States Constitution and art. I, sec. 10, and art. XLIII, sec. 1, of the amendments to the Rhode Island Constitution. Each issue will be addressed in turn.

I

 We find no constitutional impediment in the Legislature's designating the state a single judicial district for purposes of Superior Court criminal proceedings. In *State v. Edwards*, 89 R.I. 378, 385–86, 153 A.2d 153, 158 (1959), we upheld the Legislature's treatment of Providence and Bristol Counties as a single judicial unit with respect to preindictment criminal proceedings while continuing to recognize their geographical distinctness as counties for other purposes. We stated:

"[T]here is no provision in our state constitution requiring the establishment, existence or continuance of counties. Counties in Rhode Island are creatures of the legislature." *Id.* at 384, 153 A.2d at 157.

As creatures of the Legislature, in the absence of a prohibition contained in the specific constitutional guarantees afforded an accused, the General Assembly is free to disregard geographical county boundaries for purposes of both preindictment and postindictment criminal proceedings.

Of course, when enacting legislation governing criminal proceedings, the General Assembly may not overstep the bounds of its authority to "subvert the power of the judiciary." *Creditors' Service Corp. v. Cummings*, 57 R.I. 291, 300, 190 A. 2, 8 (1937). Nor can it "exercise judicial power." *Lemoine v. Martineau*, 115 R.I. 233, 238, 342 A.2d 616, 620 (1975). The latter proscription has been defined as "the *control* of a decision in a case or the *interference* with its progress, or the *alteration* of the decision once made." (Emphasis in original.) *Id.* at 238, 342 A.2d at 620. But no attempt is made by enactment of this statute to control or interfere impermissibly with the business of the courts. The "details and extent of jurisdiction" of the Superior Court is a matter within the province of the Legislature. *Floyd v. Quinn*, 24 R.I. 147, 152, 52 A. 880, 882 (1902). Under art. X, sec. 1, of our State Constitution:

"The judicial power of this state shall be vested in one supreme court, and in such inferior courts as the general assembly

may, from time to time, ordain and establish."

Section 2 of that article further provides: "The several courts shall have such jurisdiction as may from time to time be prescribed by law. Chancery powers may be conferred on the supreme court, but on no other court to any greater extent than is now provided by law."

Historically, the General Assembly has not only dictated the jurisdiction of the lower courts but has assigned the venue of criminal proceedings within their jurisdiction as well.[1] Clearly, the act does not represent an unprecedented encroachment by the Legislature into the domain reserved exclusively to the judicial branch of government under art. III of the State Constitution. Moreover, there is no conflict between the current criminal venue procedures of the Superior Court and the venue features of the act.

Rule 18 of the Superior Court Rules of Criminal Procedure provides, " *Except as otherwise permitted by statute*, or by these rules, the prosecution and trial shall be had in the county in which the offense was committed." (Emphasis added.) The underscored language reflects judicial acknowledgment of the Legislature's power to authorize criminal prosecutions in a county other than that in which the crime occurred. For example, one of the major statutory exceptions to the rule is G.L. 1956

(1969 Reenactment) § 12–17–1, as amended by P.L. 1974, ch. 118, § 3, directing venue in Providence County for crimes committed in Bristol County.[2]

Although the act contains no explanation of its purpose, we fully concur with the views expressed by the Attorney General's office that the legislative objective is to enhance the ability of the judiciary to administer the criminal-justice system effectively. The effect will be to facilitate the Superior Court's control of its criminal caseload by assignment of cases, without regard to county lines, to courts with less-crowded dockets. This is a proper and permissible exercise of the police power of the General Assembly. *See Creditors' Service Corp. v. Cummings*, 57 R.I. at 300, 190 A. at 8.

In short, far from wresting control from the hands of the judiciary, the Legislature has chosen to empower the Presiding Justice of the Superior Court with the discretion to prescribe exceptions to the general rule of venue within the county of the crime.

## II

We next focus on the jury-trial right constitutionally guaranteed an accused. The United States Constitution preserves only such characteristics of the common-law jury system which, in light of their particular function in relation to the pur-

1. See, e. g., P.L. 1822, "An act to reform the Penal Laws," § 60, p. 353; P.L. 1838, ch. 9, § 26, p. 992; P.L. 1844, "An Act concerning Crimes and Punishments," §§ 8, 161, 162, pp. 379, 408; Rev.St. 1852, "An Act concerning Crimes and Punishments," §§ 8, 161, 162, pp. 379, 408; Rev.St. 1857, ch. 222, §§ 6, 7; G.St. 1872, ch. 236, §§ 7, 8; P.St. 1882, ch. 248, §§ 7, 8; G.L. 1896, ch. 285, §§ 7, 8; G.L. 1909, ch. 354, §§ 7, 8; G.L. 1923, ch. 407, §§ 31–37; G.L. 1938, ch. 625, § 31; G.L. 1956 § 12–17–1; G.L. 1956 (1969 Reenactment) § 12–17–1.

2. Other statutory exceptions include G.L. 1956 (1969 Reenactment) § 12–3–4, as amended by P.L. 1974, ch. 118, § 10 (offenses on Narragansett Bay triable in any county at the discretion of the Attorney General); § 12–3–5 (offenses in vicinity of county or division boundary, offenses at sea, and offenses aboard steamboat or train triable in either county if committed within 100 rods of boundary line of two counties);

§ 12–3–7 (jurisdiction based on importation of stolen property, prosecution may be in any county in which person is found in possession of property or through which property was transported); § 12–3–8 (venue of larceny prosecutions in any county where offenses committed or in which defendant has possession of property or in which false pretense made); § 12–3–9 (possession of property stolen outside state may be prosecuted in any county in which person is found in possession of property or through which property was transported); § 11–26–3 (venue of kidnapping prosecutions in any county through which victim was transported or in which offender or victim found); and § 11–43–8, as amended by P.L. 1974, ch. 118, § 8 (venue of indictments or information and prosecutions for treason and related offenses at discretion of Attorney General without regard to county in which offense charged).

poses of the jury trial, may be considered indispensable components of the jury-trial right. *See Williams v. Florida*, 399 U.S. 78, 98–99, 90 S.Ct. 1893, 1904–05, 26 L.Ed.2d 446, 459–60 (1970). On the other hand, under our State Constitution, an accused is entitled to such jury-trial right as was enjoyed at the time of the adoption of the Rhode Island Constitution. *State v. Vinagro*, R.I., 433 A.2d 945, 947 (1981).[3] Additionally, we recognized in *Vinagro* that "[t]he right to trial by jury has its own unique basis under the Rhode Island Constitution." *Id.*, 433 A.2d at 946. Incidents of the jury-trial right embodied in our State Constitution cannot be abridged even though they may not be embodied in the Federal Constitution. *See Opinion to the Senate*, 108 R.I. at 633, 278 A.2d at 854.

The venue provision of the Sixth Amendment to the United States Constitution requires that the accused in a criminal prosecution be tried "by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law * * * ." The applicable provisions of our State Constitution contain no reference to venue in criminal proceedings. The right protected in such proceedings is "the right to a speedy and public trial by an impartial jury * * * " (art. I, sec. 10), which "shall remain inviolate" (amend. XLIII, sec. 1). At common law, however, juries were originally drawn from the vicinage of the crime. *See generally* Blume, *The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue*, 43 Mich.L.Rev. 59, 60–63 (1944). "Vicinage" literally means "neighborhood." *Opinion to the Senate*, 108 R.I. at 631 n.1, 278 A.2d at 854 n.1. Applied in its modern legal sense, it refers to the place from which the jury is drawn whereas venue refers to the actual place of trial. Blume, 43 Mich.L.Rev. at 60. Narrowly focused,

then the precise issue to resolve is whether an accused was entitled to a jury drawn from the vicinage of the crime when either of these constitutions was adopted.

■ Although the United States Supreme Court has yet to rule definitively on the issue, we are of the opinion that the Sixth Amendment does not grant an accused the right of vicinage of the crime as an essential incident of a jury trial. In *Williams v. Florida*, 399 U.S. at 92–97, 90 S.Ct. at 1902–04, 26 L.Ed.2d at 456–58, the Court expressed doubts about whether vicinage of the crime is an attribute of the jury-trial right contemplated by the framers of the Federal Constitution. Tracing the history of the Sixth Amendment, the Court noted that attempts to incorporate a vicinage requirement into the amendment were defeated in the Senate. The first proposal of the amendment, introduced by James Madison and adopted by the House, would have provided:

> " 'The trial of all crimes * * * shall be by an impartial jury of freeholders of the vicinage, with the requisite of unanimity for conviction, of the right of challenge, and other accustomed requisites * * *.' " (Footnote omitted.) *Id.* at 94, 90 S.Ct. at 1902–03, 26 L.Ed.2d at 457.

The proposal that emerged from the Senate, the Court explained, was substantially altered and no longer included the vicinage requirement. A motion to restore the phrase "by an impartial jury of the vicinage, with the requisite of unanimity for conviction, the right of challenge, and other accustomed requisites" was similarly rejected. *Id.* at 94 n.37, 90 S.Ct. at 1903 n.37, 26 L.Ed.2d at 457 n.37. The Court then recited the explanation for the Senate's objection to the vicinage provision as posited by James Madison:

---

**3.** Although the United States Supreme Court in *Williams* ruled that the Sixth Amendment does not mandate a twelve-person jury, in *Opinion to the Senate*, 108 R.I. 628, 640, 278 A.2d 852, 858 (1971), a majority of the court's justices was of the opinion that the inviolability provision of our State Constitution, amend. XLIII, sec. 1, formerly art. I, sec. 15, extends to an

accused, or any litigant who might be entitled to a jury trial, the immutable right to a petit jury comprised of exactly twelve persons. A constitutional amendment approved by the voters at the November 1976 general election now permits the use of six-person juries in civil actions. *See* R.I.Const.Amend. XLIII.

" 'The Senate,' wrote Madison, 'are * * * inflexible in opposing a definition of the *locality* of Juries. The vicinage they contend is either too vague or too strict a term; too vague if depending on limits to be fixed by the pleasure of the law, too strict if limited to the county. It was proposed to insert after the word Juries, "with the accustomed requisites," leaving the definition to be construed according to the judgment of professional men. Even this could not be obtained * * *. The Senate suppose, also, that the provision for vicinage in the Judiciary bill will sufficiently quiet the fears which called for an amendment on this point.' " (Footnote omitted.) *Id.* at 95–96, 90 S.Ct. at 1903, 26 L.Ed.2d at 457–58.

From this historical analysis, the Court determined that

"Even though the vicinage requirement was as much a feature of the common-law jury as was the 12-man requirement, the mere reference to 'trial by jury' in Article III was not interpreted to include that feature. Indeed, as the subsequent debates over the Amendments indicate, disagreement arose over whether the feature should be included at all in its common-law sense * * *." (Footnote omitted.) *Id.* at 96, 90 S.Ct. at 1904, 26 L.Ed.2d at 458.

As indicated, the version that finally emerged to become the Sixth Amendment gave Congress the power to determine the boundaries of the vicinage through the creation of judicial districts, with the restriction that such boundaries not exceed the territorial limits of the state in which the alleged crime was committed. In addition, the provisions of the Judiciary Act of 1789 to which Madison referred mandated that juries be drawn from the county in which the crime occurred only in cases involving capital crimes. *See generally Zicarelli v. Gray,* 543 F.2d 466, 477 (3d Cir. 1976); War-

ren, *New Light on the History of the Federal Judiciary Act of 1789,* 37 Harv.L.Rev. 49, 120 (1923).

On this very same issue, the Courts of Appeals for the Second and Third Circuits have held that the constitutional rights of an accused are not violated by trial before a jury drawn from a county other than the county where the offense was committed. *United States v. Mase,* 556 F.2d 671 (2d Cir. 1977), *cert. denied,* 435 U.S. 916, 98 S.Ct. 1472, 55 L.Ed.2d 508 (1978); *Zicarelli v. Gray,* 543 F.2d 466 (3d Cir. 1976). *But see Alvardo v. Alaska,* 486 P.2d 891 (Alaska 1971); *People v. Jones,* 9 Cal.3d 546, 510 P.2d 705, 108 Cal.Rptr. 345 (1973).[4] As further support for our conclusion, we note the decision of a majority of the Circuit Courts of Appeals holding that an accused is not entitled to a trial in the same division of the federal judicial district where the crime occurred, i. e., a right of vicinage of the crime. *United States v. Young,* 618 F.2d 1281, 1287–88 (8th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980); *United States v. Mase,* 556 F.2d at 675; *United States v. Cates,* 485 F.2d 26, 28 n.4 (1st Cir. 1974); *United States v. Florence,* 456 F.2d 46, 49–50 (4th Cir. 1972); *Franklin v. United States,* 384 F.2d 377, 378 (5th Cir. 1967), *cert. denied,* 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1147 (1968). *Cf. Zicarelli v. Dietz,* 633 F.2d 312, 317–20 (3d Cir. 1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 868, 66 L.Ed.2d 807 (1981) (exclusion of residents from county where crime occurred as a result of choosing the jury from residents of the county to which trial was transferred did not violate fair cross-section requirement of Sixth Amendment).

Finally, we regard the analysis of the First Circuit Court of Appeals in *United States v. Butera,* 420 F.2d 564 (1st Cir. 1970), to which we look for particular guidance on this issue in the absence of a decisive ruling from the United States Supreme

4. The Supreme Courts of Alaska and California have ruled that a jury selected from within the judicial district or county in which the crime was committed, but not from the immediate vicinity of the crime, was insufficient to satisfy the vicinage requirement they perceived to be incorporated into the Sixth Amendment. The Third Circuit rejected these opinions as contrary to the weight of authority among the federal courts. *Zicarelli v. Gray,* 543 F.2d 466, 480–81 (3d Cir. 1976).

Court, persuasive. That court regards the county residence of a juror to bear only a minimal relation to the jury-trial right protected by the Sixth Amendment. The court dismissed Butera's contention that the grand jury returning the indictment against him was unlawfully constituted because of disproportional representation of some of the state counties. The court reasoned:

> "[W]e are not aware that residents of counties can be said to hold views and attitudes which are in any way 'distinct' from those of their neighbors in nearby counties, nor has defendant given us any evidence of such distinctness. While common experience tells us that people's attitudes differ to some degree along lines of age, sex and extent of education, we are not aware that they differ along county lines. We have been willing above to give a broad meaning to the requisite 'distinctness' of classes but in each instance we could point to some indication that the groups isolated by defendant—at least in a general sense—possessed the essential element of distinctness. That term would have no meaning at all were we to say—in the absence of any supporting evidence—that residents of some counties have views and attitudes genuinely distinct from those of nearby counties." (Footnotes omitted.) *Id.* at 572.

Turning now to the applicable provisions of the Rhode Island Constitution, we similarly hold that the state jury-trial right afforded an accused will not be infringed upon by application of this act. In this state, "vicinage" has been construed to mean "county." *Opinion to the Senate*, 108 R.I. at 631 n.1, 278 A.2d at 854 n.1 (1971) (*citing Taylor v. Gardiner*, 11 R.I. 182 (1875)). Both before and after our State Constitution was adopted, an accused has generally been tried before a jury composed of residents of the county wherein the crime was committed. But this practice has been predicated upon statutory rules of procedure, not a constitutionally guaranteed right of vicinage.[5]

In *State v. Thomas Wilson Dorr*, Pittman, Rpt. of the Trial of Thomas Wilson Dorr for Treason Against the State of Rhode Island (1844), *cert. denied*, 44 U.S. 103 (3 How. 103), 11 L.Ed. 514 (1845), Dorr[6] was indicted and tried in Newport County for acts of treason committed in Providence and Glocester, both situated in Providence County. The indictment was returned and prosecuted pursuant to section 4 of an 1842 treason statute entitled "An Act in relation to offenses against the Sovereign power of the State." *See* "Report of the Committee on the Action of the General Assembly, on the Subject of the Constitution," 37 R.I. Acts, Resolves and Reports 14 (March 1842).[7]

---

**5.** See note 1 for statutory references cited therein.

**6.** Dorr, as head of an extralegal government under the People's Constitution, led the famed "Dorr Rebellion" of 1842 against the incumbent charter government of Rhode Island. *See generally* Conley, *Democracy in Decline*, ch. 13 (1977); King, *The Life and Times of Thomas Wilson Dorr* (1859).

**7.** This statute reads:

> "Sec. 4. All offences under this act shall be triable before the Supreme Judicial Court [now the Supreme Court] only. Any person or persons arrested under the same, and also for treason against the State, may be imprisoned or held in custody for trial in the jail of such county of the State as the Judge or Justice issuing the warrant may order or direct, and the sheriff or other officer charged with the service of such warrant, shall, without regard to his precinct, have full power and authority to take such person or persons, and him or them to commit to any county jail in this State which may be designated by such Judge or Justice, and it shall be the duty of all sheriffs, deputy sheriffs, town sergeants, constables and jailors to govern themselves accordingly. All indictments under this act, and also all indictments for treason against this State, may be preferred and found in any county of this State without regard to the county in which the offence was committed; and the Supreme Judicial Court shall have full power for good cause, from time to time, to remove for trial any indictment which may be found under this act, or for treason against the State, to such county of the State, as they shall deem best for the purpose of ensuring a fair trial of the same; and shall upon the conviction of any such offender or offenders, have full power to order, and from time to time to alter, the place of imprisonment of such offender or

Dorr challenged the constitutionality of this section of the act on the grounds that it contravened his vicinage right guaranteed, he asserted, by the then newly adopted State Constitution.

Originally, Dorr moved to dismiss the indictment for lack of jurisdiction, contending that venue was constitutionally proper only in Providence County where the offenses allegedly occurred. Although his jurisdictional plea was subsequently withdrawn because it would have resulted in further substantial delay of his trial, Dorr preserved his objection and moved for a change of venue to Providence. This request was denied. Throughout the proceedings, he maintained that a fair trial before an impartial jury could not be obtained in Newport County. *Report of the Trial of Thomas Wilson Dorr*, p. 6 (Moore, 1844); *see* Turner, *The Case of Thomas Wilson Dorr Explained* (1844).

At trial, Dorr was precluded from presenting the venue issue to the jury, the court having determined that it had previously decided a similar challenge adversely to Dorr's position in *State v. Joslin* (no citation available). However, subsequent to his conviction, Dorr was permitted to argue his venue challenge to the court in his motion for a new trial and again in his motion in arrest of judgment. *Report of the Trial of Dorr* at 98–111 (Moore). After considering his argument, the court rejected the challenge.

Our efforts to obtain the court's opinion in *State v. Joslin* have proved unavailing. Fortunately, knowledge of the substance of the case comes to us through a reference in *Taylor v. Gardiner*, 11 R.I. 182, 186 n.1 (1875). Joslin, like Dorr, was apparently

offenders to such county jail within this State, or to the State's prison, as to them shall seem best for the safe custody of such offender or offenders, any act, law or usage to the contrary notwithstanding."

The current venue provisions for treason and related offenses continue to authorize indictment or information and prosecution without regard to the county in which such offenses occur. General Laws 1956 (1969 Reenactment) § 11–43–8, as amended by P.L. 1974, ch. 118, § 8.

indicted in Newport County for acts of treason committed in Providence County.[8] He challenged the jurisdiction of the court for reasons later asserted by Dorr. Referring to the *Joslin* opinion, Chief Justice Durfee wrote:

"The state, argues the court, was originally a colony without counties; the division into counties was the act of the legislature; when, therefore, the legislature authorized an indictment in any county, without regard to the county where the offence was committed, it did nothing more than modify laws which it had previously enacted. The opinion further holds that a right of trial in the vicinage is not, at common law, and under Magna Charta, an inseparable incident of the right of trial by jury. The plea to the jurisdiction was disallowed." *Id.* at 186 n.1.

Additional support for our determination that vicinage is not an essential incident of the jury-trial right protected by our State Constitution can be found in the *Taylor* case itself. The court there sustained a statute permitting a change of venue upon the request of either party to a civil or criminal proceeding by reason of the inability to obtain a fair and impartial trial in the county of the crime. Public Laws 1873, ch. 292, § 1. It reasoned:

"Juries were originally selected from the vicinage, because being so selected they were more likely to know about the matter for trial. That reason no longer operates. The principal reason for trial in the vicinage now is the convenience of parties and witnesses." *Id.* at 184.

The right of vicinage, therefore, the court concluded, was not so immutable under

8. Based on our historical research, it is our belief that the defendant is the same Judge Joseph Joslin of Newport County Court of Common Pleas (1827–1841) who served as the president of the People's Convention of 1841 and general treasurer of the rebel government headed by Dorr. He was arrested for treason in 1842. *See generally* Conley, *Democracy in Decline* at 309, 337.

English law as to forbid removal of a cause to a county other than that in which the cause of action arose or the crime was committed.

Finally, we consider it significant that Providence County is the venue for crimes committed in Bristol County and has been since 1909. General Laws 1909, ch. 354, § 7, now codified at G.L. 1956 (1969 Reenactment) § 12–17–1. As discussed earlier in this opinion, we saw no constitutional infirmity with the legislative treatment of Providence and Bristol Counties as a single judicial unit in criminal matters for preindictment purposes. *State v. Edwards, supra.* Furthermore, in *State v. Harris* 111 R.I. 147, 152–53, 300 A.2d 267, 270, *cert. denied,* 414 U.S. 1008, 94 S.Ct. 369, 38 L.Ed.2d 245 (1973), we upheld the venue provisions of § 12–17–1 for crimes occurring in Bristol County.[9]

Having concluded that the act is constitutional under our Federal and State Constitutions, we hasten to allay the apprehensions of those concerned by the impact of its operation. The setting of venue for prosecution of a particular case pursuant to this act will not be without safeguards at the caprice of the Presiding Superior Court Justice. Such trial assignments must be within the parameters of the legislative purpose of the act, that is, to ameliorate the crowded dockets of some of the Superior Courts while more effectively utilizing the judicial resources of the less-burdened courts. Furthermore, because of the compact size of Rhode Island, we doubt that an accused would encounter serious obstacles in preparing or presenting his or her defense merely because the trial is in a county other than that where the crime occurred. However, we emphasize that nothing we have said in this opinion in any way restricts or circumvents the right of an accused to seek a change of venue, including a change to the county of the crime, for reasons of convenience or of necessity in obtaining a fair and impartial trial pursuant to Super.R. Crim.P. 21 and G.L. 1956 (1969 Reenactment) §§ 8–2–29 and 8–2–30, as amended by P.L. 1972, ch. 169, § 1.

> JOSEPH A. BELVILACQUA
> Chief Justice
>
> THOMAS F. KELLEHER
>
> JOSEPH R. WEISBERGER
>
> FLORENCE K. MURRAY
>
> DONALD F. SHEA
> Justices.

---

**9.** We also note that in his comprehensive analysis of the right of vicinage under the constitutions of the various states, Professor Blume expressed views consonant with our opinion here:

> "The Constitutions of California, Connecticut, Delaware, Idaho, Iowa, Michigan, Nevada, New Jersey, New York, North Dakota, North Carolina, Rhode Island, and Texas do not refer, in express terms, to either vicinage or venue. In these states, with the notable exception of Michigan, the venue of criminal cases is a matter of unrestricted statutory regulation." Blume, *The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue,* 43 Mich.L.Rev. 59, 92–93 (1944).

He then advocated the adoption of statutory venue provisions akin to those set forth in the act:

> "The writer believes, with Stephan, that the place of trial of criminal cases should be determined by 'the convenience of the court, the witnesses, and the person accused.' A statute designed to put into operation the principle of convenience should direct that crimes be prosecuted in certain counties, and then should authorize the court in which the prosecution is commenced to change the venue to the county most convenient for all concerned.
>
> "This type of statute should be held constitutional in the twenty states whose constitutions either have no express vicinage or venue provision or have only vague and indefinite provisions on the subject." (Footnote omitted.) *Id.* at 94.