William APTT

v.

CITY OF WARWICK BUILDING
DEPARTMENT.

No. 80–87–M.P.

Supreme Court of Rhode Island.

Aug. 11, 1983.

Sydney I. Resnick, Cranston, for petitioner.

Frederick A. Costello, Asst. City Sol., for respondent.

## OPINION

MURRAY, Justice.

This matter is before us on a petition for certiorari to review a judgment of conviction entered in the Third Division District Court. The petitioner, William Aptt (defendant), was found guilty on nine complaints charging him with violations of the City of Warwick Zoning Ordinances.

The following facts in this case are undisputed. On January 8, 1980 defendant was brought to trial before a District Court justice sitting without a jury. The testimony presented concerned the presence of large trucks[1] on defendant's property and the use of that property as a base for a tree-service business. The area where the land was located was zoned only for residential use. At the conclusion of the testimony, defendant was found guilty on each of the nine complaints and was fined $50 for each one.

On February 27, 1980, a petition for certiorari was filed in this court pursuant to G.L. 1956 (1969 Reenactment) § 12–22–1.1.[2] On May 22, 1980, the petition was granted, and on June 4, 1980, the writ was issued.

1. Large trucks are trucks weighing over two tons and having more than six axles.

2. General Laws 1956 (1969 Reenactment) § 12–22–1.1 provides:

"Review by supreme court—Violations.—Every person aggrieved by the imposition of a fine by the district court upon the finding of a violation may, within twenty (20) days after entry of judgment imposing such fine, petition the supreme court of the state of Rhode Island for a writ of certiorari to review any errors involved. The petition for a writ of certiorari shall set forth the errors claimed. Upon the filing of such a petition with the clerk of the supreme court, the supreme court may, if it sees fit, issue its writ of certiorari to the district court to certify to the supreme court the record of the proceedings in the case together with any transcript of the proceedings furnished by the petitioner at his expense."

On September 20, 1982, this case came before a three-judge panel of this court pursuant to an order directing plaintiff to show cause why defendant's petition for writ of certiorari should not be granted in light of our decision in *State v. Vinagro,* R.I., 433 A.2d 945 (1981). We found cause to be shown and ordered the case assigned to the regular calendar for full briefing and oral argument.

The sole issue we address on appeal today is whether or not defendant, who has been convicted of a zoning violation, has a right to a de novo trial by jury in the Superior Court.[3]

In *Vinagro,* we reiterated the well-established rule that a jury trial is available for those defendants whose offense was triable by a jury at common law. Specifically, we found that a jury trial is required for those defendants who have been convicted of a violation that is "criminal in nature." *Id.,* 433 A.2d at 949. Therefore, our inquiry naturally leads us to consider whether a zoning violation conviction is criminal in nature.

The defendant contends that this court decided in *Town of Glocester v. Tillinghast,* R.I., 416 A.2d 1178 (1980), that a zoning-ordinance violation is "criminal. in nature." He further reasons that since it is criminal in nature, a right to a de novo jury trial exists under *Vinagro.* We disagree for the following reasons.

First, we believe that defendant's reliance on *Tillinghast* is misplaced. *Tillinghast* involved an attempt to join an action to recover a fine for a zoning violation with a request for injunctive relief. At the Superior Court trial the Tillinghasts made a motion to strike that part of the town's complaint requesting an assessment of fines

against them. The trial justice granted the motion, reasoning that the imposition of a fine is a criminal proceeding that cannot be joined with an equitable proceeding. On appeal we upheld the trial justice's decision and stated, "Since Glocester is attempting to recover a punitive penalty, we view this suit as a criminal proceeding." *Id.,* 416 A.2d at 1179. Further, we held that cases involving fines of less than $500 for violations of municipal ordinances came within the jurisidiction of the District Court rather than that of the Superior Court. *Id.,* 416 A.2d at 1180.

In *Tillinghast* we described a zoning-violation action as a criminal proceeding in the context of deciding whether or not two actions could be joined in Superior Court. However, at no time in *Tillinghast* was the court confronted, as it is here, with the question of whether a right to a de novo jury trial arises under the state constitution for a person convicted of violating a zoning ordinance.[4] Because of the great disparity in scenarios, we find *Tillinghast* not to be controlling in the present case.

This court could dispose of the matter before it simply by holding that zoning did not come into existence until 1921 and therefore defendant could not have been entitled to a jury trial at the time the Rhode Island Constitution was enacted in 1842. However, such a cursory disposition would not do justice to the parties involved or to our decision in *Vinagro.* In *Vinagro* the defendant was convicted of violating a statute that prohibited the training or possessing of fighting animals. General Laws 1956 (1976 Reenactment) § 4–1–10. We did not quickly dispose of that case by stating that there was no common-law crime of possessing or training fighting animals.

**3.** The defendant raised various other issues in his original brief, which issues we find to be meritless. In any event, he states in his supplemental brief that the only issue in this case is whether or not a violation of a Warwick zoning ordinance is criminal in nature.

**4.** Although defendant does not specify under what constitution he brings his jury-trial claim, we consider it under the Rhode Island Constitution because the United States Supreme Court has held that an accused is not entitled to a jury trial under the Federal Constitution when the potential sentence cannot exceed six months. *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970).

Rather, we went through an extensive historical analysis so as to determine whether the offense was of the character that constituted a criminal offense at common law. We found that the defendant's offense was criminal in nature and so we decided that he be given a right to perfect a jury trial despite the fact that his offense only constituted a violation. *State v. Vinagro,* R.I., 433 A.2d at 949.

■ Unlike the facts presented to us in *Vinagro,* we are of the opinion that the facts in the present case are not commensurate with a finding of "criminal in nature" for purposes of determining whether or not a jury trial is warranted.[5] The defendant in *Vinagro* was arrested and his property was seized pursuant to a search warrant obtained. Moreover, the statute he violated has recently been amended thereby making any infraction thereof a felony. Clearly, these are factors which demonstrate that the violation was criminal in nature. In comparison we are presented today with no such indicia of criminality. Consequently, we hold that a zoning-violation conviction is not the type of offense which was triable to a jury at the time of the adoption of the Rhode Island Constitution. As a result we find that defendant has no constitutional right to a de novo jury trial in Superior Court.

Our decision today is supported by those commentators who have addressed the issue. It has been stated that

"[p]ersons who violate zoning and subdivision regulations may be regarded as offenders subject to penalties, but they are seldom thought of as persons who have committed crimes." 4 Anderson, *American Law of Zoning* § 29.01 at 381 (2d ed. 1977).

A second commentator has stated the following with respect to the right to a jury

trial for violators of zoning ordinances: "The general rule is that no such right to a jury trial exists." 3 Rathkopf, *The Law of Zoning and Planning,* § 45.02[3] at 45–17 (1983).

■ Two final points should be made about this case. First, we are of the opinion that violations of zoning law often involve technical questions of fact or local patterns of land usage which are better resolved by a judge sitting without a jury. Second, we feel it is unnecessary to inundate an already over-crowded Superior Court trial docket with zoning appeals from the District Court.

For the stated reasons, the petition for certiorari is denied, the writ heretofore issued is quashed, and the papers in the case are remanded to the District Court.

Mr. Justice Kelleher, with whom Mr. Chief Justice Bevilacqua joins, dissenting. I am sure defendant will be somewhat surprised to find out that his legal involvement with Warwick's building inspector did not amount to a criminal proceeding. The charge in each of the nine complaints is listed as an "offense," and the District Court made a finding of "guilty" on each of the charged offenses and in each case imposed a fine of $50 plus costs.[6] The defendant was then released on personal recognizance, acknowledging that he would be indebted to the State of Rhode Island in the amount of $900 if he failed (1) to appear at all future hearings or (2) to keep the peace and be of good behavior or (3) to remain in Rhode Island while the matter was pending or (4) to notify the court or the police of a change in his address.

Admittedly, calendar clog and one's desire that technical questions of fact or local patterns of land usage be decided by a judge were two factors furthest from anyone's mind back in 1842 when Rhode Is-

---

5. In *Vinagro,* we stressed that we were not deciding that a jury trial be required for any incident which may be classified as a violation pursuant to the definition found in G.L.1956 (1981 Reenactment) § 11–1–2. *State v. Vinagro,* R.I., 433 A.2d 945, 949 n. 6 (1981).

6. General Laws 1956 (1980 Reenactment) § 45–24–6 authorizes the imposition of a fine of up to $100 for each violation of a zoning ordinance, with each day the violation continues constituting a separate offense.

land's Constitution was adopted and thereafter "[i]n all criminal prosecutions, the accused" was to "enjoy the right to a speedy and public trial, by an impartial jury" (art. I, sec. 10) and the "right of trial by jury" was to "remain inviolate" (art. I, sec. 15).

In *Town of Glocester v. Tillinghast*, R.I., 416 A.2d 1178 (1980), we described the municipality's attempt to impose a fine for a zoning violation as a "criminal proceeding." Later, in *State v. Vinagro*, R.I., 433 A.2d 945 (1981), in upholding the defendant's claim that § 12–22–1.1's direct-review provision violated our state constitutional mandate that the right to jury trial shall remain inviolate, we also noted that the inviolability provision, which today is embodied in the terms of the forty-third amendment to our State Constitution, represents a constitutional guarantee that justiciable controversies that were triable by a petit jury when the Rhode Island Constitution was adopted will continue to be so triable without any restrictions or conditions that would materially hamper or burden the right. After a historical analysis of what occurred around 1842, this court in *Vinagro* came to the conclusion that the 1976 direct-appeal-of-violations proviso had to give way to the inviolability clause's guarantee because in 1842 a defendant could appeal de novo from any criminal conviction by a justice of the peace to the Court of Common Pleas where there would be a de novo trial before a jury.

Among the cases cited by the court in sustaining Vinagro's claim of a constitutional right to a jury trial was *State v. Peckham*, 3 R.I. 289 (1838), where a jury considered a charge relating to the unlicensed sale of less than ten gallons of liquor, an offense that called for a maximum fine of $50. Consistency demands that the result reached in *Vinagro* should have been reached here for, in my opinion, defendant's claim of unconstitutionality is well founded.

Parenthetically, I believe that fears of inundating Superior Court dockets can be alleviated by having the General Assembly adopt a technique similar to that which it employed at the January 1974 legislative session when the General Assembly enacted P.L.1974, ch. 41, and established within the Department of Transportation an Administrative Adjudication Division that would consider alleged violations of a variety of state statutes, all of which relate in some degree to the operation of motor vehicles. The Legislature specifically provided that any order or determination made by the division was to be considered as "civil in nature." Today, the decriminalization proviso can be found in G.L.1956 (1982 Reenactment) § 31–43–3(3). Thus, it is my belief that infractions that come before the division are to be considered noncriminal in nature and do not come within the reach of art. I, § 15, of our State Constitution. Although the infractions call for the imposition of a fine, such exactions will not be considered as punishment for the violation of a criminal statute. Rather, they are to be regarded in a broader sense as being a penalty, which is a sum of money exacted by way of punishment for doing an act that is prohibited or omitting to do some act that is required to be done which may or may not be a crime. *South Carolina State Highway Department v. Southern Railway Co.*, 239 S.C. 227, 122 S.E.2d 422 (1961).

The late Chief Justice Francis B. Condon in *Dyer v. Keefe*, 97 R.I. 418, 420, 198 A.2d 159, 160 (1964), after pointing out that in Rhode Island trial by jury was inviolate, remarked, "The right is thus placed absolutely beyond the power of the legislature to alter or abolish it." The majority in its desire to expedite litigation has, in my opinion, accomplished by judicial fiat what Chief Justice Condon said could not be done by the General Assembly. Consequently, I would vote to remand the case to the Superior Court where initially the defendant could have his fate decided by a jury.