**STATE**

**v.**

**John KLUTH.**

No. 2009–31–C.A.

Supreme Court of Rhode Island.

July 13, 2012.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice ROBINSON, for the Court.

On March 28, 2008, after a consolidated trial, a Providence County Superior Court jury found the defendant, John Kluth, guilty of thirty counts of obtaining money by false pretenses. Thereafter, on June 18, 2008, the trial justice sentenced the defendant to a total of thirty-five years, with sixteen years to serve at the Adult Correctional Institutions and the remainder suspended, with probation.[1] The defendant filed a timely notice of appeal.

On appeal, defendant contends (1) that the then presiding justice of the Superior Court exceeded his authority in granting the prosecutor's request to change venue; (2) that the charges filed against him were improperly joined as a matter of law, in view of the provisions of Rule 8(a) of the Superior Court Rules of Criminal Procedure; and (3) that, even if the charges had been properly joined, the trial justice's failure to sever the cases infringed upon his right to a fair trial.

For the reasons set forth in this opinion, we affirm the judgments of the Superior Court.

### I

### Facts and Travel

### A

#### Criminal Informations

This case arises from seventeen criminal informations filed against defendant, which in 2007 were filed in all four Superior Courts in Rhode Island. We summarize

Virginia M. McGinn, Department of Attorney General, for State.

Lara E. Montecalvo, Office of the Public Defender, for Defendant.

1. In addition to the sentence referenced in the text, the trial justice also ordered that defendant make restitution in the total amount of $8,230.

below the allegations made in those informations. We have set forth the allegations made in each information in further detail in the appendix to this opinion.

The defendant was charged with obtaining money by false pretenses in violation of G.L.1956 § 11–41–4 [2] and § 11–41–5.[3] The informations indicate that the alleged incidents occurred in 2005 and 2006, while one incident allegedly occurred in 2003 and another in 2007. The informations further allege that defendant would engage the complainants in a conversation—usually either by recounting details familiar to the complainant or by approaching the complainant near an ATM machine. The defendant would then allegedly tell the complainants that his lobster truck had broken down and that if he could not obtain money for the repairs, his lobsters would spoil. The informations allege that defendant would ask the complainants for money; they further allege that he would promise to repay the money and that he would often also promise to give the complainants some lobsters. According to the informations, defendant never repaid the complainants.

**2.** General Laws 1956 § 11–41–4 provides in pertinent part as follows:

"Every person who shall obtain from another designedly, by any false pretense or pretenses, any money * * * with intent to cheat or defraud * * * shall be deemed guilty of larceny."

**3.** Section 11–41–5(b) provides in pertinent part as follows:

"(b) Any person convicted of an offense in violation of §§ 11–41–1 – 11–41–7, except § 11–41–3, which involves a victim who is a person sixty-five (65) years of age or older at the time of the offense and which involves property or money * * * secreted by false pretenses * * *, with a value in excess of five hundred dollars ($500), shall be punished * * *."

**4.** General Laws 1956 § 12–3–4(b) provides as follows:

## B

## The Motion to Transfer Venue

At a hearing in the Superior Court for Providence County on February 13, 2008, defense counsel objected to the prosecutor's motion to transfer the cases from the Superior Courts in Kent, Newport, and Washington Counties to the Superior Court in Providence County. The prosecutor represented to the trial justice that defendant's former counsel had agreed to such a transfer of the cases; the prosecutor added, however, that there was no written memorialization of that agreement. After her review of G.L.1956 § 12–3–4(b),[4] the trial justice remarked that "venue ought not to be considered in a cavalier fashion," and she said that she would not assume proper venue just because "somehow" the cases had been transferred to her court. In view of the language of § 12–3–4(b), the trial justice directed the parties to the then presiding justice so that he might decide the motion with respect to the transfer of venue.

After hearing arguments from the parties that same day, the presiding justice

"(b) For the purpose of prosecuting and punishing criminal offenses over which the superior court has jurisdiction, the state of Rhode Island is declared to be a single district. The offenses shall be prosecuted and punished at the following locations *unless otherwise ordered by the presiding justice:*

"(1) For offenses committed in a city or town within Providence or Bristol counties, at the superior court in Providence;

"(2) For offenses committed in the city of Warwick or a town within Kent county, at the superior court in Warwick;

"(3) For offenses committed in a town within Washington county, at the superior court in South Kingstown; and

"(4) For offenses committed in the city of Newport or a town within Newport county, at the superior court in Newport." (Emphasis added.)

noted that judicial economy constitutes a legitimate factor for consideration in deciding whether or not to grant a transfer of venue. Taking into account the judicial resources available at the courthouse in Providence, he found that judicial economy would be best served if all of the cases were transferred to Providence County. Accordingly, the presiding justice granted the prosecutor's motion to transfer venue to Providence County.

## C

### The Motion to Consolidate

Also on February 13, 2008, a hearing was held in the Superior Court with respect to the prosecutor's motion to consolidate the charges for the purpose of trial pursuant to Rule 13 of the Superior Court Rules of Criminal Procedure.[5] In that motion, the prosecutor specifically requested that the court consolidate thirty-nine of the fifty-five counts, which are referenced in the several criminal informations.[6] The prosecutor based that motion on the contention that those thirty-nine counts were "identical" and that, therefore, they repre-

sented a common plan or scheme perpetrated by defendant over a period of several years in various towns and cities in Rhode Island.

In ruling on the motion to consolidate,[7] the trial justice observed that Rule 13 was particularly pertinent to this case. She noted that, under that rule, a trial justice may order multiple informations to be tried together if the offenses could have been joined in a single information; she added that a decision in that regard was confided to the trial justice's "sound discretion." The trial justice proceeded to state that the thirty-nine crimes at issue in the motion before her were "allegations of a signature crime, allegation[s] of a modus operandi." She further noted that the allegations might come in at trial pursuant to Rule 404(b) of the Rhode Island Rules of Evidence,[8] "once the [c]ourt examines the proffered evidence in accordance with [R.I. R. Evid.] 403 because evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury." [9]

5. Rule 13 of the Superior Court Rules of Criminal Procedure provides as follows:
 "The Court may order two (2) or more indictments, informations, or complaints to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment, information, or complaint. The procedure shall be the same as if the prosecution were under such single indictment, information, or complaint."

6. The sixteen counts that the prosecutor did not move to consolidate involved larceny of checks, as well as the forgery of signatures on the checks.

7. The trial justice ruled on the motion to consolidate prior to the decision of the presiding justice concerning transfer of venue, expressly noting that her ruling was conditional upon the presiding justice's granting the motion to transfer.

8. Rule 404(b) of the Rhode Island Rules of Evidence provides as follows:
 "(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

9. Rule 403 of the Rhode Island Rules of Evidence provides as follows:
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The trial justice then stated that, after she weighed the arguments of counsel, she found that she would "allow [Rule] 404(b) evidence in the event that [she] was satisfied by a fair preponderance of the evidence that the prior act did, indeed, occur and that it was, indeed, sufficiently similar to the offense charged to fall within [Rule] 404(b)." Accordingly, the trial justice found that, as long as she would allow the evidence to be admitted at each trial in any event, consolidation would not cause such prejudice to defendant as to make its value substantially outweighed by prejudice. She summarized her decision by stating that the thirty-nine counts at issue in the instant case were "very, very similar" and clearly fell within Rule 13. Accordingly, an order entered consolidating the thirty-nine counts.

## D

### The Motions to Suppress and the Trial

In late February of 2008, a hearing on defendant's motions to suppress the identifications of defendant was held in Superior Court.[10]

Thereafter, prior to *voir dire*, defense counsel once again expressed his wish to "re-argue [his] motion about this joinder of all of these cases to preserve [his] client's rights as far as that's concerned." After discussion with the trial justice, defense counsel stated that he anticipated moving to pass the case as a result of prejudice because of the consolidation.

After the close of evidence and after both parties presented their closing arguments to the jury, the trial justice instructed the jury. She specifically instructed

with respect to the joinder of the criminal informations as follows:

"I'd like you to consider each case separately, each of these thirty-one cases separately. The defendant is being charged with multiple accusations from various locations throughout the State. The reason the defendant is being tried with these multiple accusations in one case is because the State of Rhode Island brought these charges here in this courthouse for trial. You must, however, give consideration to each accusation separately. You may not think of these accusations as being grouped or combined together. Nonetheless, you may consider evidence of other crimes for a limited purpose. * * *

"However, you may not decide that proof beyond a reasonable doubt of one or more of these accusations is proof of all the accusations. Each accusation must rise or fall on its own facts and may not be decided upon the facts of any other accusation before you. * * *

"In other words, you may not say because the State of Rhode Island proved one or more of the charges before you then the State has proven all of the charges. You must review the evidence of each of the charges independently of one another to determine the guilt or innocence of each of these. Put another way, you may not think of the charges as a group in assessing the guilt or innocence of the accused. The defendant is entitled to have each accusation determined from evidence in each case separate and apart from any other case.

"Consequently, you must analyze what the evidence is in each individual charge

---

10. During the hearing referenced in the text, defense counsel stated that he "would like to renew [his] objection to the consolidation of this case." He stated that his contention was based on the "[s]ame argument" as he had previously made and that he wanted to pre-

serve his "client's right with respect to that and not have [his] actions considered as some type of a waiver with respect to that [issue]." The trial justice then ruled that "the motion is denied on the same grounds [as those on which she] denied the motion previously."

leaving out any evidence which you may have found in any of the other charges being considered by you other than for the limited purpose of modus operandi, as discussed later. The fact that you return a verdict of guilty or not guilty to one charge should not in any way affect your verdict regarding any of the other charges against the defendant.

" * * * This trial involved claims that defendant committed crimes against thirty-one different complaining witnesses. As you've been instructed, the defendant is presumed innocent of each alleged crime. You must consider each case separately, and as to each individual case in order for you to find the defendant guilty of the crime charged, you must determine whether the State has proven defendant guilty by proof beyond a reasonable doubt. * * *

"When you consider each individual case, you are only permitted to consider the evidence offered against a defendant in any of the other cases for a limited purpose. Here is the purpose, okay: You may consider evidence of other crimes or bad acts as proof of motive, opportunity, intent, preparation or plan. In other words, you may consider evidence of other crimes or bad acts as proof of a so-called modus operandi."

The trial, which had lasted for approximately three weeks, concluded on March 28, 2008, when the jury found defendant guilty of thirty counts of obtaining money by false pretenses and not guilty of one count. The defendant thereafter timely appealed.

## II

## Analysis

### A

#### The Transfer of Venue

█ Rule 18 of the Superior Court Rules of Criminal Procedure provides that "[e]xcept as otherwise permitted *by statute* or by these rules, the prosecution and trial shall be had in the county in which the offense was committed." (Emphasis added.) Moreover, § 12–3–4(b) provides that offenses shall be prosecuted and punished in the superior court for the county in which they were committed; however, that section also specifies that the presiding justice may order otherwise.

This Court has previously stated that "the legislative objective [of § 12–3–4(b) ] is to enhance the ability of the judiciary to administer the criminal-justice system effectively." *Advisory Opinion to the Governor*, 437 A.2d 542, 544 (R.I.1981). That advisory opinion went on to specifically note that the effect of § 12–3–4(b) is to "facilitate the Superior Court's control of its criminal caseload by assignment of cases, without regard to county lines, to courts with less-crowded dockets." *Advisory Opinion to the Governor*, 437 A.2d at 544. The advisory opinion expressly recognized that, by its enactment of § 12–3–4, the General Assembly empowered the presiding justice with "the discretion to prescribe exceptions to the general rule of venue within the county of the crime." *Advisory Opinion to the Governor*, 437 A.2d at 544.

In our judgment, the presiding justice did not abuse his discretion in treating the instant charges as exceptions to "the general rule of venue within the county of the crime." *See id.* Although the Providence County Superior Court may have the heaviest caseload in the state, it also has the greatest number of resources. In view of that fact, coupled with the demands that the trial of the instant case (which involved significant pretrial motions and which was estimated to last for more than three weeks) would make on the judicial system,

the transfer of venue was an exercise in eminent good sense. In light of the considerations of judicial economy, and notably the significant resources demanded by defendant's trial, we are satisfied that the presiding justice's ruling with respect to transfer constituted a sustainable exercise of his discretion.

## B

### Joinder

■ The defendant contends that the criminal informations filed against him were improperly joined[11] as a matter of law because they were not based on the same act or transaction. The defendant argues that the informations were based on multiple *individual* acts or transactions.

### 1. The Standard of Review Relative to Joinder

■ Our review of a trial justice's decision to join multiple criminal informations for a single trial pursuant to Rule 13 involves two steps. *See State v. Day*, 898 A.2d 698, 703 (R.I.2006); *State v. Hernandez*, 822 A.2d 915, 918 (R.I.2003). First, "[b]ecause proper joinder under Rule 8(a) is a matter of law, we review de novo whether the state properly joined one or more charges in a single indictment * * *."[12] *State v. Rice*, 755 A.2d 137, 142 (R.I.2000); *see also State v. Pereira*, 973 A.2d 19, 25 (R.I.2009); *Hernandez*, 822 A.2d at 918. Then, if the joinder is proper, the decision as to a Rule 13 motion "lies within the sound discretion of the trial justice and will not be disturbed absent a showing of a clear abuse of discretion." *Hernandez*, 822 A.2d at 918; *see also Day*, 898 A.2d at 703.

### 2. Rule 8(a) of the Superior Court Rules of Criminal Procedure

In carrying out the required two-step analysis, we first review in a *de novo* manner whether the charges were properly joined pursuant to Rule 8(a). *Day*, 898 A.2d at 703; *see also Hernandez*, 822 A.2d at 918. We do not suggest that charges of wrongdoing which occurred in separate counties may be joined pursuant to Rule 8(a) in the same information or indictment. We review Rule 8(a) joinder as a matter of law only as a result of the two-step Rule 13 analysis. *See Day*, 898 A.2d at 703. Such joinder is proper only when the offenses charged are "of the same or similar character or are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." Rule 8(a); *see also Pereira*, 973 A.2d at 25.

We have repeatedly stated that "offenses of varying degrees of similarity are sufficiently of the same or similar character." *Day*, 898 A.2d at 704 (internal quotation marks omitted); *see also Pereira*, 973 A.2d at 26–27 (holding that joinder was proper when all of the several charges involved sexual conduct with a minor, even though the degree of sexual conduct varied); *Hernandez*, 822 A.2d at 918; *Rice*,

---

**11.** We note that, in the instant case, the prosecutor's motion to consolidate was equivalent to a motion seeking joinder for the purpose of trial.

**12.** Rule 8(a) of the Superior Court Rules of Criminal Procedure provides as follows:

"Two (2) or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan."

755 A.2d at 143; *State v. Waite*, 665 A.2d 1338, 1339 (R.I.1995).

There is no question that the allegations contained in the informations in the instant case are of the same or similar character. It is specifically alleged that defendant initiated a conversation with each of the complainants by using personal information about them (often about their church or neighborhood); that defendant told each complainant a materially similar story about his truck carrying lobsters having broken down; that defendant told each complainant that he needed money to retrieve his truck lest his lobsters spoil; that defendant obtained a certain amount of money from the complainants; that defendant told the complainants that he would repay them (and told most complainants that he would give them lobsters as well); and that defendant never repaid that money. Although the specific details of the event alleged in each information may vary slightly, the underlying scheme and tale were exactly the same.

As the offenses charged were of the same or similar character, we are satisfied that, for the purposes of a Rule 13 analysis, the offenses could have been joined in a single information.

### 3. Rule 13 of the Superior Court Rules of Criminal Procedure

 Since joinder was proper, we must now examine whether the trial justice abused her discretion in ordering the charges joined for trial under Rule 13. *See Day*, 898 A.2d at 703. We preliminarily note that, "[w]here evidence of one crime would be admissible at a separate trial of another charge, a defendant will not suffer any additional prejudice if the two charges are tried together." *State v. Cline*, 122 R.I. 297, 329, 405 A.2d 1192, 1209 (1979) (internal quotation marks omit-

ted); *see also Hernandez*, 822 A.2d at 919–20.

 It is a well-established principle that Rule 404(b) "prohibits the use of evidence of prior bad acts, wrongs, or crimes to show the defendant's propensity to commit the crime with which he is currently charged." *See State v. Dubois*, 36 A.3d 191, 199 (R.I.2012) (internal quotation marks omitted); *see also State v. Rios*, 996 A.2d 635, 638 (R.I.2010); *State v. Graham*, 941 A.2d 848, 861 (R.I.2008). Nevertheless, "[e]vidence of other conduct, even of a criminal nature, may be received if it is interwoven with the current charge in a way that tends to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like." *State v. John*, 881 A.2d 920, 926 (R.I.2005) (alteration in original) (internal quotation marks omitted); *see also Dubois*, 36 A.3d at 199; *Graham*, 941 A.2d at 861.

If the charges consolidated in the instant case had been tried separately, it would have been probable that each criminal information would have been admitted as evidence at each case to prove a design, plan, or scheme under the auspices of Rule 404(b), provided that the probative value of said evidence was not substantially outweighed by unfair prejudice pursuant to Rule 403. *See State v. Gaspar*, 982 A.2d 140, 148 (R.I.2009).

The hearing justice, similarly, ruled in her decision on the motion to consolidate that, if the charges were tried separately, the allegations in the other charges could be admitted at each separate trial, pursuant to Rule 404(b), after a review pursuant to Rule 403. She based her conclusion on the fact that the allegations contained nearly identical facts and could act at trial as allegations reflecting "clearly a modus operandi, a signature crime, a plan and a design."

Due to the fact that the evidence of the other crimes probably would be admitted at separate trials and that each allegation is nearly identical to the other, the trial justice did not abuse her discretion in deciding that the charges could be joined pursuant to Rule 13. As a result, the trial justice did not err in joining the thirty-nine criminal counts for trial.

## C

### Severance

#### 1. The Standard of Review Relative to a Motion to Sever

 The severance of joined counts against a defendant, which is authorized by Rule 14 of the Superior Court Rules of Criminal Procedure, is not a matter of right, but rather is confided to the sound discretion of the trial justice. *See State v. Rivera,* 987 A.2d 887, 899 (R.I.2010); *see also Pereira,* 973 A.2d at 27. As a result, this Court will not reverse a trial justice's decision concerning a Rule 14 motion absent a clear abuse of discretion. *Pereira,* 973 A.2d at 27–28; *see also Rivera,* 987 A.2d at 899. We shall overturn a trial justice's ruling with respect to such a motion only when a defendant has shown "that the trial justice's denial of the motion to sever prejudiced the defendant to such a degree that he or she was denied a fair trial." *Hernandez,* 822 A.2d at 920; *see also Rivera,* 987 A.2d at 899; *State v. Verrecchia,* 766 A.2d 377, 386 (R.I.2001). Moreover, "in cases in which the outcome would have been the same had separate trials been held, we will not disturb the trial justice's decision not to sever, even when the defendant may have suffered some disadvantage in defending against the joined counts simultaneously." *Rice,* 755 A.2d at 144; *see also Rivera,* 987 A.2d at 899–900.

#### 2. Rule 14 of the Superior Court Rules of Criminal Procedure

The defendant avers that, even if the cases were properly joined, the "denial of his request for a severance infringed upon his fundamental right to a fair trial."

Rule 14, which governs motions to sever, provides in pertinent part as follows:

"If it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

We recognize that defendant vigorously objected to the prosecution's motion to consolidate; in his brief to this Court, however, defendant has failed to point to any "request for a severance," and no such motion is contained in the voluminous record.[13] We recognize that defense counsel repeatedly voiced his objection to the motion to consolidate, and that, later, he referred to such motion as his "motion about joinder," as did the trial justice during that exchange.

 Despite defense counsel's efforts to avoid waiver of his appellate contentions

---

13. We recognize that "Defendant's Objection to State's Motion to Consolidate" states that "Defendant's counsel is cognizant of the consolidation and severance rules of criminal procedure in the Superior Court." However, we deem that passing reference to severance to be insufficient to preserve the severance issue for appellate review. *See State v. Go-* mez, 848 A.2d 221, 237 (R.I.2004) ("As established by this court, an issue that has not been raised and *articulated* previously at trial is not properly preserved for appellate review." (emphasis added) (internal quotation marks omitted)); *see also State v. Snell,* 892 A.2d 108, 123 (R.I.2006).

as to Rule 14, the inexorable fact is that Rule 14 was never brought to the attention of the trial justice, whose decision with respect to joinder was based upon Rule 8 and Rule 13. Pursuant to our frequently invoked "raise or waive" rule, we shall "not review issues that were not presented to the trial court in such a posture as to alert the trial justice to the question being raised." *State v. Figuereo*, 31 A.3d 1283, 1289 (R.I.2011) (internal quotation marks omitted); *see also State v. Diefenderfer*, 970 A.2d 12, 30 (R.I.2009).[14] Accordingly, the defendant's contention concerning severance, never having been meaningfully presented to the trial justice, is not properly before this Court.[15]

## III

## Conclusion

For the reasons set forth in this opinion, we affirm the judgments of the Superior Court. The record in this case may be returned to that tribunal.

14. We have recognized an exception to the raise or waive rule in the context of basic constitutional rights when "the alleged error [was] more than harmless, and the exception * * * implicate[s] an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial." *State v. Breen*, 767 A.2d 50, 57 (R.I.2001); *see also State v. Figuereo*, 31 A.3d 1283, 1289 n. 7 (R.I.2011). In the instant case, however, no such exception would apply because, in view of Rule 14 of the Superior Court Rules of Criminal Procedure, a motion to sever is by no means a novel rule of law which would not reasonably have been known to counsel at the time of trial.

15. Even if defendant had made a Rule 14 motion to sever, we are of the opinion that the trial justice did not abuse her discretion in trying the cases together. We have recognized that a Rule 14 motion to sever may be necessary when, even though offenses may be appropriately joined in a single indictment, a defendant may still be able to show "such prejudice as might constitute a denial of his

## APPENDIX

### 1. K2/07–86A

The criminal information filed in K2/07–86A alleges that defendant obtained money from Complainant No. 1[16] by false pretenses in violation of G.L.1956 §§ 11–41–4 and 11–41–5.

The "police narrative" attached to that criminal information states that, on November 17, 2006, Complainant No. 1 reported to the East Greenwich police that, during the Winter of 2005–2006, he had been approached in a particular parking lot by a male (later identified as defendant), who told him a "story of truck troubles" and asked for money to assist in paying for its repair. The narrative adds that defendant promised to repay the money and also to provide Complainant No. 1 with some lobster. The narrative states that, subsequently, Complainant No. 1 gave defendant $200 and then arranged to meet him at a nearby Dunkin' Donuts at

right to a fair trial." *State v. Goulet*, 21 A.3d 302, 309 (R.I.2011) (internal quotation marks omitted); *see also State v. Lassor*, 555 A.2d 339, 345 (R.I.1989). Considering the trial justice's instructions, as well as the jury's acquittal of defendant on one of the charges, we perceive no basis for concluding that the jury became hostile or cumulated the evidence to the prejudice of defendant. *See, e.g., State v. Pereira*, 973 A.2d 19, 32 (R.I.2009); *State v. LaRoche*, 683 A.2d 989, 998 (R.I. 1996); *State v. Goodreau*, 560 A.2d 318, 322 (R.I.1989); *State v. Patriarca*, 112 R.I. 14, 30–31, 308 A.2d 300, 311 (1973). Therefore, since we are unable to conclude that defendant could have demonstrated that he suffered any real or substantial prejudice that would outweigh our understanding of the trial justice's legitimate concerns for judicial economy, it is our judgment that defendant's right to a fair trial was not infringed by the joinder of the several criminal informations.

16. To respect the privacy of the complainants, we shall simply refer to them as Complainant No. 1, Complainant No. 2, Complainant No. 3, and so forth.

an agreed-upon time. The narrative further indicates that defendant never repaid the money.

### 2. K2/07–87A

The criminal information filed in K2/07–87A alleges that defendant obtained money by false pretenses from Complainant No. 2 in violation of § 11–41–4 and § 11–41–5.

The witness statements attached to that information indicate that, while Complainant No. 2 was parked in her car, a man (later identified as defendant) knocked on her car window. According to the statements, believing that she knew him, Complainant No. 2 gave defendant $100 (although he had asked for $1,000) so that he could retrieve his car from a garage. According to Complainant No. 2, defendant never repaid the money.

### 3. K2/07–101A

The criminal information filed in K2/07–101A alleges that defendant obtained money from Complainant No. 3 by false pretenses in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to that criminal information alleges that, on January 14, 2006, Complainant No. 3 reported to the Warwick police that, in September of 2005, he was approached at a CVS store in Warwick by a heavy-set white male (later identified as defendant). According to the narrative, defendant told Complainant No. 3 that his lobster truck had broken down and that he needed $300 to have the truck repaired. The narrative further states that Complainant No. 3 gave defendant the requested amount of money. According to the witness statement of Complainant No. 3, defendant told Complainant No. 3 that he would repay him in two days and would also give him a few lobsters.

The police narrative alleges that Complainant No. 3 never saw defendant again and was never repaid the money.

### 4. K2/07–102A

The criminal information filed in K2/07–102A alleges that defendant obtained money from Complainant No. 4 by false pretenses in violation of § 11–41–4 and § 11–41–5.

In his witness statement, dated November 13, 2006, Complainant No. 4 stated that, on October 25, 2006, at about 4 p.m., he was approached by a man (whom he later identified as defendant) outside of a store in Warwick. Complainant No. 4 further stated that defendant proceeded to engage him in a conversation, wherein defendant convinced Complainant No. 4 that he knew defendant from his neighborhood and also that he knew defendant's mother. Complainant No. 4 alleged that defendant then began talking about being a "lobster man and [that] he needed money to sell [the] lobsters before they died." Complainant No. 4 added that defendant told him that he needed $386 and that, even though his mother was out of state, she would give him money that same night. Complainant No. 4 stated that defendant did indeed receive a phone call from someone who he said was his mother; during that conversation defendant said to her: "Guess who I'm with and he's going to give me the 386.00." The statement of Complainant No. 4 further alleges that, after he gave defendant the requested money, defendant told Complainant No. 4 that he would "definitely" bring him the money to his home on the following day.

### 5. K2/07–121A[17]

The criminal information filed in K2/07–121A alleges that defendant obtained mon-

---

17. The Complainant in K2/07–120A passed away prior to trial; accordingly, that case

ey from Complainant No. 5 by false pretenses in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to that information states that, on January 5, 2007, Complainant No. 5 reported to the Warwick police that a man (later identified as defendant) approached him in a parking lot and told him a story which caused Complainant No. 5 to believe that he knew defendant. According to the narrative, defendant stated that his truck, which was filled with lobsters, had broken down and that he needed money for a tow. The narrative states that Complainant No. 5 then gave defendant $60.

### 6. K2/07–122A

The criminal information filed in K2/07–122A alleges that defendant obtained money from Complainant No. 6 by false pretenses in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to that criminal information states that, on November 13, 2006, Complainant No. 6 reported to the Warwick police that, on August 28, 2006, he was approached at the Greenwood Credit Union by a male (later identified as defendant). The narrative further states that defendant alleged that he needed $260 to retrieve his broken-down truck. According to the narrative, Complainant No. 6, who "felt bad" for defendant, gave him $260. The narrative further states that defendant promised to pay back that money.

### 7. N2/07–131A

The criminal information filed in N2/07–131A alleges that defendant obtained money from Complainant No. 7 by false pre-

tenses in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to said information states that, on February 12, 2007, the Tiverton police received a complaint from Complainant No. 7 regarding an incident in a Bank of Newport parking lot in Tiverton on April 18, 2006. The police narrative states that, on that date, Complainant No. 7 was approached by a male (who was later identified as defendant) who told Complainant No. 7 that his vehicle had broken down while carrying a load of live lobsters. The narrative further alleges that defendant had told Complainant No. 7 that his friends attended the same church as Complainant No. 7 and that he had attempted to contact representatives of the church to assist him, with no success. According to the narrative, defendant asked Complainant No. 7 for help and told him that if he helped him, defendant would visit the church on Sunday, repay him the loan, and present him with a dozen lobsters. The narrative alleges that Complainant No. 7 gave $300 to defendant, but never heard from him again.

### 8. P2/07–1290A[18]

The criminal information in P2/07–1290A alleges, *inter alia*, that defendant obtained money by false pretenses from nine complainants (*viz.*, Complainant Nos. 8–16) in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to the information alleges that, on November 15, 2006, Complainant No. 8 reported to the Providence police that, in October of 2005, while operating his vehicle, Complainant No. 8 was approached by a male (later identified as defendant) on Westminster Street in downtown Providence. The narrative states that defendant, who had been

---

was dismissed.

18. We detail in the text only the counts upon which judgment entered in this particular case.

calling Complainant No. 8 by name, engaged him in a conversation and indicated that the two of them knew each other. The defendant then told Complainant No. 8 that his lobster truck, which he said contained 900 pounds of lobster, had broken down; he added that the lobsters would spoil if he did not retrieve the truck "out of tow." The narrative alleges that defendant then asked for $275 so that he could retrieve the truck. The narrative states that Complainant No. 8 then drove to the bank, withdrew $280, and gave that money to defendant; the defendant then asked for the address of Complainant No. 8 and stated that he would send him a money order.

The affidavit appended to an arrest warrant for defendant (which warrant is attached to the information in P2/07–1290A) states that, on January 6, 2006, Complainant No. 9 was approached by a male (later identified as defendant), who called Complainant No. 9 by name, told him that they were neighbors, and mentioned that he owned a particular antique store on the street where Complainant No. 9 lived, which store he called by its name. The affidavit states that defendant then told Complainant No. 9 that his lobster truck, which contained several hundred pounds of lobster, had broken down and that he needed $300 to retrieve the truck. The affidavit further alleges that defendant told Complainant No. 9 that he would "stop by" the home of Complainant No. 9 in order to repay him. According to the affidavit, believing defendant to indeed be his neighbor, Complainant No. 9 withdrew $300 and gave it to defendant. The affidavit states that Complainant No. 9 later learned that someone else actually owned the antique shop that defendant had mentioned.

The police narrative attached to the criminal information also alleges that, on January 12, 2006, Complainant No. 10 reported to the Providence police that, on September 7, 2005, while in a vehicle stopped at a red light, he was approached by a male (later identified as defendant) who was calling his name. The narrative alleges that defendant approached the vehicle and spoke with Complainant No. 10 about particular places that led Complainant No. 10 to believe that he knew defendant. The narrative states that defendant then entered the car and told Complainant No. 10 that his truck containing several hundred pounds of lobsters had broken down and that he needed $275 so that he could retrieve the truck. According to the narrative, defendant then told Complainant No. 10 that he would meet him at a particular place that same night in order to return the money to him.

With respect to Complainant No. 11, the police narrative alleges that he had reported to the Providence police that, on September 20, 2005, while he was on jury duty in the federal court, he was approached by a male, who identified himself as Jack Caine (an alias which was employed by defendant) and who started a conversation with Complainant No. 11. The narrative alleges that, after causing Complainant No. 11 to believe that they were neighbors, defendant stated that his lobster truck had broken down and that he needed some money so that he could have his truck fixed. The narrative states that Complainant No. 11 gave defendant $200 and that defendant told Complainant No. 11 that he would pay him back the next day. According to the narrative, Complainant No. 11 never heard from defendant again.

The police narrative further alleges that, on November 21, 2006, Complainant No. 12 reported to the Providence police that, in June or July of 2005, he was working in

Providence and was approached by a male who identified himself as John Kane. (According to the police narrative, John Kane is an alias employed by defendant.) According to the narrative, defendant told Complainant No. 12 that he was his neighbor and identified facts that caused Complainant No. 12 to believe that such was the case. The narrative next states that defendant asked Complainant No. 12 for $100 so that he could get his truck out of the repair shop and said that he would stop by the house of Complainant No. 12 that night in order to repay him and would also give him ten lobsters. The narrative states that Complainant No. 12 never again heard from defendant.

The narrative further states that, on February 12, 2007, Complainant No. 13 filed a complaint with the Providence police regarding John Kluth. The narrative states that, in December of 2006 or January of 2007, Complainant No. 13 was leaving the library on Rochambeau Avenue, when he was approached by a male (later identified as defendant) who engaged him in conversation. According to the narrative, during that conversation, defendant caused Complainant No. 13 to believe that they were neighbors by telling Complainant No. 13 that he had seen him walking his dog in the neighborhood. The narrative then states that defendant told Complainant No. 13 that he had a lobster truck that was in a repair shop and that the truck contained a load of live lobsters that would spoil if he did not retrieve the truck. The narrative proceeds to state that defendant then asked for $200 and stated that he would repay Complainant No. 13 and would also give him a few lobsters. According to the narrative, Complainant No. 13 then gave defendant $200 but never heard from him again.

The narrative further states that, on November 20, 2006, Complainant No. 14 reported to the Providence police that, in June or July of 2005, he had been sitting in his car at Rhode Island Hospital while waiting for his wife, when a male (later identified as defendant) approached him and said: "Hi neighbor, you know me, I live in the white house on the hill and wave to you everyday I walk my dog up the street." The narrative states that Complainant No. 14 thought that defendant was one of his neighbors "because there is a white house on a hill in his neighborhood and there is a guy who walks a dog in the neighborhood." The narrative alleges that defendant then told Complainant No. 14 that the Massachusetts State Police had towed his truck, which was full of lobsters, and that the lobsters would spoil if he could not retrieve it. According to the narrative, defendant told Complainant No. 14 that his mother was a nurse at the hospital and that he had come to borrow money from her, but it was her day off. The narrative goes on to allege that defendant then stated that he would need $80 to retrieve his truck and that he would repay that sum to Complainant No. 14 and would also give him lobsters. The narrative states that Complainant No. 14 never heard from defendant again.

The narrative also alleges that, on November 17, 2006, Complainant No. 15 reported to the Providence police that, on June 27, 2005, he had been at the Au Bon Pain restaurant in downtown Providence, when he was approached by a male (later identified as defendant). The narrative states that defendant engaged Complainant No. 15 in a conversation that led him to believe that he knew defendant through family members. The narrative alleges that defendant then told Complainant No. 15 that he had a lobster truck that was broken down and that his load of lobsters

would spoil if he did not retrieve his truck. According to the narrative, defendant asked Complainant No. 15 for $300, which amount Complainant No. 15 gave to defendant. The narrative alleges that, subsequently, on June 30, 2005, defendant contacted Complainant No. 15 and told him that the truck was "worse than he had thought," and he proceeded to ask Complainant No. 15 for $900, which amount Complainant No. 15 thereafter gave to defendant. The narrative proceeds to allege that, during the first week in July of 2005, defendant went to the residence of Complainant No. 15 and told him that he and his girlfriend needed money for a place to stay because they were going to be evicted. According to the narrative, as a result of Complainant No. 15's questioning of defendant, defendant called his attorney so that the attorney could verify his story; Complainant No. 15 spoke by phone with the attorney, who assured him that defendant was "getting money in" and that Complainant No. 15 should "save the receipts." The narrative alleges that Complainant No. 15 gave defendant a total of $4,000 and saved the "receipts" so he could be reimbursed. The narrative further states that, after never being repaid and being unable to make contact with defendant although he had made multiple attempts to do so, Complainant No. 15 contacted defendant's attorney to tell him that he was going to contact the police. The narrative states that the attorney told Complainant No. 15 not to contact the police because, if defendant were arrested, no one would be able to recover any of the money which was owed.

A police narrative attached to the information alleges that, on November 22, 2006, Complainant No. 16 reported to the Providence police that an individual (later identified as defendant) approached him in downtown Providence and said: "I know you, I see you around the neighborhood." The narrative states that, believing that defendant was his neighbor, Complainant No. 16 listened to defendant tell him that he needed money to retrieve his lobster truck from a tow yard before the lobsters spoiled. According to the narrative, Complainant No. 16, who was under the impression that defendant would pay him back that night, gave defendant a check for $325.

### 9. P2/07–1291A

The criminal information filed in P2/07–1291A alleges that defendant obtained money from Complainant No. 17 by false pretenses in violation of § 11–41–4 and § 11–41–5(b).

The police narrative attached to that criminal information alleges that, on March 21, 2005, the Smithfield police received a complaint from Complainant No. 17, who alleged that he had been approached outside of his church in Providence by a man who "talked him into" driving him to Smithfield, where he withdrew $400 from his bank. According to the narrative, defendant had told Complainant No. 17 that his truck containing seafood had broken down and that the seafood would spoil if he did not get it back on the road soon. The narrative further states that defendant returned to the home of Complainant No. 17 on the following day and again asked for money, saying that he was starving; according to the narrative, at that point in time, defendant explained that he had already mailed to Complainant No. 17 the money that had been borrowed the previous day. Finally, the narrative alleges that Complainant No. 17 gave defendant $60 that day and that defendant never repaid him.

### 10. P2/07–1292A

The criminal information filed in P2/07–1292A alleges that defendant obtained money from three complainants [19] by false pretenses in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to that criminal information states that, on November 18, 2006, Complainant No. 18 contacted the State Police Financial Crimes Unit to file a complaint. That complaint alleges that, in late April or early May of 2006, Complainant No. 18 had been walking in front of the Bank of America in Kennedy Plaza in Providence, when he was approached by an individual (later identified as defendant) who identified himself as a neighbor of Complainant No. 18. The narrative states that defendant told Complainant No. 18 that his lobster truck had broken down and that he was in need of $550 so that the truck could be towed and repaired. The narrative goes on to allege that Complainant No. 18, who was under the impression that defendant was indeed his neighbor, gave defendant $550. The narrative states that defendant then asked for an additional $200 for gas, which Complainant No. 18 also gave him. According to the narrative, defendant promised to repay the money and give Complainant No. 18 ten to twelve lobsters and ten pounds of scallops. Finally, the narrative states that defendant never repaid him.

Another police narrative attached to that information states that, on November 7, 2006, Complainant No. 19 complained of fraud while at "Lincoln Greyhound Park" and later gave a statement to a Lincoln police officer. In that statement, Complainant No. 19 stated that he was playing a machine at the Park when a male (later identified as defendant) approached him and began to talk to him and said that he knew him. Complainant No. 19 stated that they spoke for over an hour and that defendant managed to obtain information from Complainant No. 19 that he would not usually share with strangers. According to Complainant No. 19, defendant told him that his lobster truck had broken down and then asked whether he could borrow $390. The narrative states that defendant said that he would return the money the following day. The narrative alleges that Complainant No. 19 saw defendant again and "managed to get $50.00 [back] from him;" however, on another occasion, when Complainant No. 19 saw defendant, defendant "took off."

### 11. P2/07–2466A

The criminal information in P2/07–2466A alleges that defendant obtained money from Complainant No. 20 by false pretenses in violation of § 11–41–4 and § 11–41–5.

The witness statement attached to that information, dated February 7, 2007, alleges that, one day in November of 2005, Complainant No. 20 was in a parking lot on the Wampanoag Trail in East Providence at approximately 11 a.m. In his witness statement, Complainant No. 20 stated that, at that point in time, he was sitting in his truck on which his name and the name of his business were printed. His statement alleges that, a man (later identified as defendant) approached him and said: "[H]i [Complainant No. 20,] can you help me my truck is broke down [sic ] in Barrington, all the fish, scallops, and lobster

---

19. The state moved to dismiss count 2 of the criminal information (which concerned one of the three complainants in this particular case) as "duplicitous," since that count was "already charged in W2/07–0097A." Therefore, we shall describe the allegations set forth with respect to that complainant in the portion of this appendix relating to W2/07–97A, *infra.*

will perish if I don[']t get my truck out." Complainant No. 20 stated that defendant then asked him for $70, and Complainant No. 20 responded by giving him $90. Complainant No. 20 further alleged that he gave defendant his address and that defendant told him that he would drop the money off at his home that afternoon; Complainant No. 20 additionally alleged that defendant told him that he would give him a five-pound bag of scallops in recognition of his helpfulness. Finally, Complainant No. 20 stated that he never heard from defendant again.

### 12. P2/07–3171A

The criminal information filed in P2/07–3171A alleges that defendant obtained money from eight complainants (Complainant Nos. 21–28) by false pretenses in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to that criminal information alleges that, on August 14, 2007, Complainant No. 21 reported to the Providence police that, on April 5, 2005, he was approached by a male (later identified as defendant). The narrative states that, defendant engaged Complainant No. 21 in conversation and stated several facts that caused Complainant No. 21 to believe that he knew him. According to the narrative, defendant then asked Complainant No. 21 for money so that his lobster truck could be fixed and promised to repay him. The narrative further alleges that Complainant No. 21 then wrote defendant a check for $370, which defendant cashed. The narrative states that, on April 9, 2005, defendant asked Complainant No. 21 for an additional $600, and Complainant No. 21 wrote defendant another check, which check defendant thereafter cashed. The narrative proceeds to allege that, on April 11, 2005, defendant asked to borrow an additional $600, and

that Complainant No. 21 wrote defendant a check for that amount, which check defendant thereafter cashed. Moreover, the narrative states that, on April 13, 2005, defendant mailed a letter to Complainant No. 21 and asked to borrow $750 and that Complainant No. 21 wrote a check for that amount and mailed it to the address specified by defendant; the narrative further states that defendant eventually cashed that check. The narrative also states that, on April 17, 2005, defendant asked Complainant No. 21 for $850 and that Complainant No. 21 wrote a check for that amount, which defendant cashed.

The narrative further alleges that, on August 14, 2007, Complainant No. 22 gave a formal statement to the Providence police. Therein, Complainant No. 22 stated that, on the afternoon before Thanksgiving Day in 2005, a male (later identified as defendant) approached him as he was leaving a bank in downtown Providence. According to the narrative, defendant then engaged Complainant No. 22 in conversation, and, after several minutes, Complainant No. 22 was under the impression that he knew defendant from either his church or his neighborhood. The narrative states that defendant then told Complainant No. 22 that his lobster truck had broken down and that he asked Complainant No. 22 for $300 so that the truck could be repaired. The narrative states that defendant told Complainant No. 22 that he would repay him. The narrative further states that Complainant No. 22 gave defendant the requested amount of money, but never saw or heard from defendant again.

That narrative also alleges that, on August 21, 2007, Complainant No. 23 gave a statement to the Providence police regarding an incident which he said had occurred between late August and early September in the year 2005. According to the narrative, Complainant No. 23 was approached

by a male (later identified as defendant) as he was leaving Citizens Bank in downtown Providence. The narrative proceeds to state that, during their conversation, defendant made statements that caused Complainant No. 23 to believe that they were neighbors and asked to borrow $200 so that his lobster truck could be fixed before the entire load of lobsters spoiled. The narrative alleges that Complainant No. 23 then gave defendant $200 and that defendant never repaid him.

The narrative further alleges that, on September 6, 2007, Complainant No. 24 reported to the Providence police that, in the Autumn of 2006, he had been approached by a male (later identified as defendant) on Westminster Street in downtown Providence. The narrative alleges that, during the course of a conversation with defendant, Complainant No. 24 was told by defendant that they were neighbors and that he walks his dog by the home of Complainant No. 24. The narrative states that defendant also told Complainant No. 24 that his truck, which he said was full of lobsters, had broken down and that he needed $100 so that the truck could be towed to a garage. According to the narrative, defendant told Complainant No. 24 that, he would repay him that evening and would also drop off a few lobsters for him. The narrative goes on to allege that Complainant No. 24 never heard from defendant again.

The narrative further states that, on September 7, 2007, Complainant No. 25 made a statement to the Providence police which alleged that, on October 27, 2005, he was leaving the Garrahy Court Complex when he was approached by a male (later identified as defendant). During the ensuing conversation, defendant told Complainant No. 25 that he was his neighbor and that he "was the guy who drove the pick-up truck with the dog in the back." According to the narrative, Complainant No. 25, at that point in time, believed that defendant was indeed his neighbor. The narrative states that defendant then went on to state that he had a truck full of lobsters and that the truck had broken down and that he needed $300 so that he could retrieve the truck from a tow yard lest the lobsters spoil. The narrative alleges that Complainant No. 25 then gave a $300 check to defendant, who took the check, endorsed it, and cashed it. According to the narrative, Complainant No. 25 never heard from defendant again.

A police narrative attached to the instant criminal information states that, on August 16, 2007, Complainant No. 26 gave a statement to the effect that, on January 4, 2007, defendant came to his door "looking and sounding extremely agitated." According to that narrative, defendant told Complainant No. 26 that his lobster truck had broken down and that he needed to "get the lobster[s] to market or they would spoil." That narrative further states that defendant asked Complainant No. 26 whether he could lend him $1,000 and that he would repay him over the next few weeks. The narrative states that Complainant No. 26 suggested that they contact his church to see whether it would lend defendant half of the requested money and Complainant No. 26 would give him the difference. According to the narrative, defendant later returned and stated that the church would lend him some money, so all that he needed from Complainant No. 26 was $450. According to the narrative, Complainant No. 26 thought that defendant seemed so distraught that he did not question him any further and wrote him a personal check for the requested amount. The narrative states that Complainant No.

26 never heard from defendant or saw him again.[20]

A police narrative attached to that information alleges that, on August 28, 2007, Complainant No. 27 reported to the police that, on a Thursday in October of 2003, an individual (later identified as defendant) approached him at a store in a gas station and began a conversation with him. According to the narrative, during this conversation, defendant told Complainant No. 27 that his truck, which contained seafood, was "disabled" and was "being repaired." The narrative further states that defendant then asked Complainant No. 27 for a loan so that he might have his truck fixed; the narrative indicates that defendant told Complainant No. 27 that, in return, he would repay the loan as well as give him some lobsters. The narrative states that Complainant No. 27 agreed to lend defendant $25 and give him a ride. Finally, the narrative alleges that that was the last time he saw or heard from defendant.

That narrative further states that, on September 7, 2007, it came to the attention of a sergeant of the Providence Police Department, that Complainant No. 28 reported that, on June 7, 2006, defendant had told him about a lobster truck which had broken down. According to the narrative, Complainant No. 28 gave defendant $200.

### 13. W2/07–96A

The criminal information filed in W2/07–96A alleged that defendant obtained money from two complainants [21] (Complainant Nos. 29 and 30) by false pretenses in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to the information in that case states that, on July 3, 2006 and August 15, 2006, the North Kingstown Police Department received two complaints, both of which alleged that a person (later identified as defendant) approached the complainants and told them that his truck had broken down and that he had a load of lobsters on the truck. The complaint states that defendant would continue to talk to those complainants in order to win their confidences. According to the complaint, defendant succeeded in obtaining $120 from Complainant No. 29 and $300 from Complainant No. 30. The narrative states that he promised both complainants that he would pay them back the following day and would give them some lobsters.

### 14. W2/07–97A

The criminal information filed in W2/07–97A alleges that defendant obtained money from Complainant No. 31 by false pretenses in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to that criminal information alleges that, on November 16, 2006, Complainant No. 31 filed a complaint with the Rhode Island State Police Financial Crimes Unit. In that complaint, Complainant No. 31 stated that, on the afternoon of September 11, 2006, he was leaving Citizens Bank in Narragansett when he was approached by a middle-aged white male with light brown hair and blue eyes (later identified as defendant). The narrative states that defendant told Complainant No. 31 that they were neighbors, that he was in need of some help because his truck, which was full of lobsters, had broken down, and that he needed cash to

---

**20.** The jury found defendant not guilty of the charges relating to Complainant No. 26.

**21.** The first count in the criminal information was later dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

pay AAA. The narrative states that defendant further told Complainant No. 31 that he had tried to withdraw money from the bank, but that he was unable to do so because a check that he had earlier deposited had yet to clear. The narrative alleges that defendant then asked Complainant No. 31 whether he could lend him some money so that he could have his truck towed; the narrative further alleges that defendant said that he would repay Complainant No. 31 the next day by leaving the money in his mailbox. According to the narrative, Complainant No. 31 gave defendant $400, but defendant never repaid him.

### 15. W2/07–165A

The criminal information filed in W2/07–165A alleges that defendant obtained money from Complainant No. 32 by false pretenses in violation of § 11–41–4 and § 11–41–5.

The police narrative attached to said information alleges that, on February 15, 2007, Complainant No. 32 filed a complaint with the North Kingstown Police Department concerning events that had occurred on June 21, 2006 outside of a Sovereign Bank in North Kingstown. The narrative alleges that a male (later identified as defendant) began a conversation with Complainant No. 32 and told Complainant No. 32 that he knew him. The narrative goes on to state that, after winning the trust of Complainant No. 32 through their conversation, defendant proceeded to tell him that "he [had] had some bad luck" because his lobster truck had broken down causing him to be unable to bring his load of lobsters to market. The narrative further states that defendant then convinced Complainant No. 32 to withdraw $400 so that defendant could have his truck repaired. The narrative alleges that, after defendant received the money, he promised Complainant No. 32 that he would repay him

and give him some lobsters. The narrative further states that defendant never repaid Complainant No. 32.

### 16. W2/07–166A

The criminal information filed in W2/07–166A alleges that defendant obtained money from Complainant No. 33 by false pretenses in violation of § 11–41–4 and § 11–41–5(b).

The police narrative attached to said information states that, on November 22, 2006, Complainant No. 33 made a report to the Westerly police about an interaction with a male (later identified as defendant) on September 21, 2006 at Foxwoods Resort and Casino in Ledyard, Connecticut. The narrative states that, on that date, defendant approached Complainant No. 33 and identified himself as the son of a friend of Complainant No. 33. The narrative further alleges that defendant told Complainant No. 33 that his truck full of lobsters (having what defendant said was a value of $4,000) had broken down and that he was concerned that he would lose the lobsters if he did not fix his truck. The narrative states that defendant asked Complainant No. 33 whether he could borrow $900 for the purpose of fixing the truck. The narrative further states that Complainant No. 33 then drove with defendant to Westerly, Rhode Island, so that he could withdraw $900, which amount he then gave to defendant. The narrative alleges that defendant told Complainant No. 33 that he would pay him back the following morning but that defendant never repaid him.